William Rowan, Administrator of the Estate of Elbert Rowan, Deceased, Appellee, v. Bartonville Bus Line, Appellant.

## Gen. No. 7,977.

1. CARRIERS—*no recovery by passenger exposing himself to injury by cars on parallel track.* The general rule is that a passenger who knowingly places himself in a position, such that cars on a parallel track may strike him, may not recover from the carrier for injuries so sustained.

2. CARRIERS—*duty of buses operated for hire as to protection of passengers.* Buses operated for public hire under State authority assume all the responsibility of other carriers for hire to protect passengers with all the care and foresight consistent with the mode of conveyance and exercise of their business.

3. NEGLIGENCE—*when defendant's request for directed verdict properly refused.* Defendant's request for directed verdict was properly refused when the evidence showed that the defendant's negligence was the proximate cause of injury to plaintiff's intestate.

4. EVIDENCE—*necessity for consideration of all evidence relating to issue.* To establish a fact or event, all the statements and evidence relating thereto must be considered.

5. INSTRUCTIONS—*refusal of charge based upon fact which evidence does not tend to establish.* In the absence of evidence fairly tending to show a fact, it is not error to refuse to give instruction based thereon.

6. CARRIERS—*when evidence fails to show passenger's arm hanging outside of window when struck by passing truck.* Evidence in action for injury to arm of motor bus passenger struck by passing truck held not to show that arm was hanging outside of window of bus when accident occurred.

Appeal by defendant from the Circuit Court of Tazewell county; the Hon. FRANK LINDLEY, Judge, presiding. Heard in this court at the April term, 1926. Affirmed. Opinion filed November 6, 1926.

BARNETT, WILSON & TICHENOR, for appellant.

SMITH & SMITH, for appellee.

MR. PRESIDING JUSTICE CROW delivered the opinion of the court.

Elbert Rowan, while a passenger on a bus of appellant, received an injury from which he died. Appellee having been appointed administrator an action was prosecuted in which plaintiff recovered a judgment for the sum of $6,000 as damages for the death. To reverse the judgment defendant has brought the record to this court assigning the usual errors in such cases.

Appellant was a common carrier of passengers for hire. Its equipment for carriage were buses operated on the State hard road between Peoria and Pekin. It was duly authorized so to operate by a certificate of convenience and necessity granted by the Commerce Commission. On the occasion of the injury

Elbert Rowan was sitting on the left side of the bus two seats in the rear of the driver. He had worked all night and was going to his home in Pekin. The weather was warm and all windows were open. After taking his seat he placed his left arm on the window sill the witnesses saying it was lying on the sill, some saying the elbow extended slightly over the outside. He wore no coat and his shirt sleeves were rolled up. His head rested on the back of the seat in which he was sitting and he was asleep. The window sill was three and one-half inches wide.

The bus in which deceased was a passenger was traveling in a southerly direction and a motor truck carrying cattle was traveling in a northerly direction at the time of the injury. The concrete road at the place of the injury was 15 feet wide, being narrower than at the point where he took passage on the bus. The road being a State highway had a black line in the middle four to six inches in width. The evidence shows that immediately before the injury the wheels of the bus were very close to the black line, and the body was extended over it. The driver of the truck testified that the bus was "hugging the black line" when he came close to it and he turned to the right onto the "shoulder" to pass it. He says the elbow of some one was protruding over the window sill. He passed the bus with his truck but felt no concussion and knew nothing of the accident until overtaken by the bus, the driver of which turned around after the accident and overtook him. Deceased was sitting on the side next to the black line. As the truck approached some one on it called attention to the elbow and the truck was turned to the right, the wheels being on the dirt shoulder. Hamilton Hendricks was a passenger going south to Peoria. He was a locomotive fireman for the Cleveland, Cincinnati, Chicago & St. Louis Railroad. He had driven taxicabs and trucks. His observation of what transpired at and

immediately before the accident, as disclosed by the abstract, shows he was alert and his testimony evidently impressed the jury with its truthfulness as well as its accuracy. It was corroborated by all the witnesses testifying. It might reasonably be expected, his business being that of locomotive fireman, he would more readily grasp the event, quickly executed as it was, than would others not so employed. In his testimony he says: "I was riding in the bus, and in my work is safety first to look out for obstructions and stuff and I was noticing that this road was some narrower, it seems to me along there, and I noticed the close passage of trucks and automobiles and vehicles as we met them, and as we came down the road it seemed to me that this truck was or this Bartonville bus was hugging the black line pretty close; if anything, overhanging just slightly." In this he is corroborated by those on the truck. The witnesses were in general agreement that the impact attending the injury was a "crash like tin or glass or something of that kind." One of the men on the cattle truck noticed the elbow of deceased and called attention of the driver to it and he "laid over." The men on the truck did not know it had come in contact with anything while passing the bus. The head of the ulna was broken. There was a compound fracture of the bones of the forearm about two inches above the middle, with the upper ends of the lower fragments penetrating, and extending about one inch and a half through the skin. There was considerable hemorrhage from both wounds over the site of the compound fracture.

It is contended by appellant that the court should have directed a verdict for defendant. In support of the contention numerous cases are cited announcing rules of law applicable where the carriage is by rail. No universal rule can be deduced applicable to all cases of injuries to passengers on cars propelled on

tracks running parallel. It is true that in such cases if a passenger places himself in a position of danger knowing that cars will pass him on parallel tracks and that he may be struck by such passing cars or fixed objects very near to the car in which he is riding, he may not recover for his injuries. But even that rule has its exceptions as in *North Chicago St. R. Co. v. Polkey*, 106 Ill. App. 98. In that case the Appellate Court found defendant negligent in permitting passengers to ride on the running board of its car through a tunnel built of stone the walls of which were so close to the cars that one riding in that manner was likely to be injured. The Supreme Court reversed the case (203 Ill. 225) and remanded it for error in the instructions. But the gravamen of the action was untouched by the opinion. Other cases, some of which are cited by appellant here, deny liability where the danger was apparent or was not under control of the carrier.

But in this case the passenger was in a vehicle under the sole control of the defendant. It, nor the truck, was not confined in its line of travel to fixed tracks as are railroad cars. Defendant sought and obtained the right from the State to use the common highways of the State for a special purpose—the carriage of passengers. It had several buses in operation. It undertook to carry for hire on the highway those desiring to be carried in that manner. As a common carrier it knew that to protect its passengers it was bound to do all that human care, vigilance and foresight can reasonably do, consistent with the mode of conveyance it employed and the exercise of its business as a common carrier. *North Chicago St. R. v. Polkey*, 203 Ill. 225 (233) and cases cited. The greater the peril, the more care is imposed on the carrier. The driver may not have known of the position of any passenger but it was his duty to exercise care commensurate with the peril of all under the circumstances. The defendant

had no control over the vehicle it was meeting. But
as servant of a common carrier the driver in charge
of its vehicle could not negligently calculate on his
ability to avoid danger to its passengers, nor so cal-
culate or speculate as to the safety of passengers in
any respect. Such carriers assume all the responsi-
bility of any other carrier for hire. The evidence es-
tablished the negligence of defendant and that it was
the proximate cause of the injury to plaintiff's intes-
tate. The court did not err therefore in refusing the
peremptory instruction generally.

It is specifically urged that deceased had his arm
hanging outside of the car when injured, and that for
that reason the verdict cannot be sustained and should
have been directed for defendant, and that the motion
to direct a verdict having been denied, an instruction
covering that supposed condition was improperly re-
fused by the court. The evidence does not show that
the arm of deceased was hanging outside of the win-
dow at any time before the accident. We find noth-
ing, upon a most careful examination of it, that war-
rants that conclusion. The sole basis for the conten-
tion is the testimony of McGinness, driver of the truck,
and of Hendricks who seems to have been paying par-
ticular attention to deceased. Williamson, who was
on the truck, testified he did not know where the arm
was at the time of the crash. Hendricks testified that
deceased was reclining with his arm on the window
sill, and it looked like his elbow was on the edge of
the sill if not protruding over a couple of inches. He
was in that position all the way. His arm was not out-
side of the window at any time as he saw. The wit-
ness said: "As soon as the crash happened I looked
on that side and saw the boy bring his arm in and I
saw the bone sticking out of the flesh of his arm."
This is not evidence that the arm was outside the
car when struck. The blow was at or near the elbow
as shown by the evidence. What he saw immediately

after the concussion cannot in the light of all the evidence be reasonably construed as evidence that the arm was outside the car when struck. It seems highly improbable if not impossible that the particular injury inflicted could have occurred if the arm had been hanging outside of the car as contended.

The testimony of the witness McGinness who was driving the truck is also relied on to prove that the arm was hanging out of the bus at the time of the injury. As abstracted, his testimony as to the situation as he approached and was passing the bus is:

"Observed the elbow on the window sill of the bus at the time we passed that elbow. Noticed it just as we passed to see if the fellow passed the truck and he did in front. The fellow sitting with his arm hanging out. I was very close to him and I could see his elbow as we went by." Interrogatively this evidence is: Q. What did you notice? A. Just as I passed I noticed to see if the fellow passed the truck and he did in front. Q. Which fellow passed? A. The fellow sitting with his arm hanging out. I was very close to him and could see his elbow as we went by. At other points of his testimony he speaks of the elbow sticking out. It is not irrelevant to note that this witness speaking of the body of the bus extending over the black line in the road says "it was hanging over the line." That idiosyncrasy of speech is proper for consideration in determining the meaning of his language. The other witnesses who saw the position of the arm say it was lying on the window sill.

The statements of events by witnesses, like all statements oral or written, to establish a fact must be considered along with all statements relating to the event. It is not enough that, part considered a given fact or theory may be warranted. The story of each must be considered in its entirety. Having considered the evidence of the only witness adduced to prove that the arm of deceased was hanging outside of the car

at the time he was struck, that conclusion must be rejected by all reasonable minds when viewed in the light of all the testimony. In this connection, the fact must not be overlooked that while there was blood from the arm on the window sill on which the arm was resting, and on the seat on which he was sitting, no one says, so far as we have been able to discover, that any blood was on the outside of the bus or on the ground at the point where the injury occurred, or on the truck. Blood and pieces of bone from the arm were thrown by the concussion into the bus. The pieces of bone were picked up after the collision. Passengers in the bus had blood spots on their clothing. If the forearm were on the outside when the injury was inflicted these conditions could not have occurred. They could, and from the injury as described, no doubt did, come from the arm lying on the window sill when, by the powerful concussion near the elbow, the upper part of the bones were broken and the force was communicated to the lower portion of the bones. The elbow received the impact communicated to it by the combined momentum of the heavy bus and the still heavier truck with its load of cattle. We may not be able to calculate with mathematical certainty the exact cause of the peculiar injury sustained. But the circumstances fail to afford any basis for a conclusion that it was the result of his arm hanging outside of the conveyance in which he was riding. We think therefore the court did not err in refusing the peremptory instruction to find for the defendant on that ground.

The refused instruction relating to the negligence of deceased in having his arm outside of the window at the time of the injury, the refusal of which is assigned as error, is:

"The Court instructs the jury that although they may believe from the evidence that the deceased while riding as a passenger in defendant's bus received an

injury to his arm which resulted in his death, yet, if at the time of said injury deceased by negligence or carelessness had his arm out of the window of said motor bus, and that such negligence or carelessness contributed directly to the happening of such injury, the verdict should be for the defendant.''

What we have said with reference to the fact upon which the instruction is based disposes of the alleged error. If there is evidence fairly tending to prove a material fact it is error to refuse an instruction as to the law applicable to it. But the evidence does not show the fact nor, when considered as a whole, does it fairly tend to do so. It was not error therefore to refuse the instruction.

Other errors are assigned and have received the attention they demand. We think no reversible error intervened and the judgment of the circuit court is affirmed.

*Affirmed.*