Becker (Bertha), Respondent, vs. Luick, Executor, Appellant.

Becker (Rudolph P.), Respondent, vs. Same, Appellant.

*December 4, 1935—March 3, 1936.*

482

For the appellant there were briefs by *Coleman & Barry,* attorneys, and *Gerald P. Hayes* of counsel, all of Milwaukee, and oral argument by *Mr. John S. Barry* and *Mr. Hayes.*

*Sydney C. Charney* of Milwaukee, for the respondents.
The following opinion was filed January 7, 1936:

WICKHEM, J.   The accident in question occurred on January 11, 1932.   Defendant was driving her automobile south on Seventy-Sixth street about 8 o'clock in the evening.   It was drizzly and sleeting, and the pavement was wet and slippery, but her windshield was clear and visibility good.   She was traveling in the center lane of Seventy-Sixth street.   She claims to have stopped at the arterial sign about thirty-five feet from the corner.   She then proceeded to cross Bluemound road, which is a six-lane concrete highway intersecting Seventy-Sixth street.   The Becker car was proceeding west in the second lane from the north curb, and the defendant's car struck the Becker car in the region of the right rear fender.

Plaintiff sustained injuries as a result of the collision and was taken to a hospital.   An examination disclosed a laceration to the forehead and contusions to the back of the head, in addition to various abrasions.   There was a diagnosis of concussion of the brain with intercranial pressure.   A spinal tap was ordered.   During this operation, which consisted of inserting a hollow needle four or five inches long between the fourth and fifth lumbar vertebræ, the needle was broken off. The length of the imbedded portion of the needle is one and one-half inches, and the depth beneath the skin is two and three-sixteenths inches.   The point of the needle is in the spinal canal.   On the following day an unsuccessful attempt was made to remove the needle.   Two days later a second operation was attempted which was also unsuccessful.   All of the very substantial injuries claimed by plaintiff appear to have come from the presence of the needle in her back.

Plaintiff's evidence is to the effect that prior to the injury she was well; was sixty-one years of age; weighed two hun-

dred nineteen pounds; did all the housework for her family, including the washing, scrubbing, cleaning, etc. She employed no help. She was of a bright and cheerful disposition. The testimony is that after the accident she became morose; she could not sleep; she could not stand any noise, talked of committing suicide, was moody and depressed; that she has been sick and in pain, worried, unable to do ordinary work around the house; she cannot lean over on account of the pain in her back. The experts appear to agree that the needle could account for her nervous condition, the evidence being overwhelmingly to the point that the presence of the needle and its effect upon her nerves and mind is of infinitely greater importance than any pathological condition set up by it.

The first assignment of error is that the court erred in refusing to change the jury's answers to questions relating to the negligence of David Becker. It is contended that David Becker, son of plaintiff and her agent upon the occasion in question, was negligent as a matter of law, and that his negligence was, as a matter of law, as great as that of defendant. While plaintiff contends that David Becker was not her agent, we think this question is not before us. The trial court ruled adversely to plaintiff on this point. This ruling was acquiesced in at the time by plaintiff, and there is no motion to review. It thus becomes necessary to examine defendant's contentions with respect to the fact and degree of David Becker's negligence.

According to David's testimony, his car was about two hundred feet from the intersection when he first saw defendant's car. He states that he paid no further attention to defendant's car. Defendant insists that this admission establishes his negligence as a matter of law, and leaves no jury issue, but we are not persuaded that this is true.

Becker was driving upon an arterial highway and in the second lane from the curb nearest defendant's car. He was

about the same distance from the intersection as was defendant, and was proceeding at about the same or perhaps a slightly higher speed. He had the right to assume that defendant would continue to maintain a proper speed and stop at the arterial, and that he would clear the crossing safely ahead of her. From the fact that Becker had nearly cleared the intersection when his car was struck on the right rear fender, the jury could conclude that the observations and judgment based thereon satisfied the requisites of due care.

It is true that this court said in *Nicholson v. Schroeder,* 202 Wis. 517, 232 N. W. 872, that a driver who testified that he might have seen the other car, but paid no attention, was totally oblivious and guilty of negligence as a matter of law, but this statement is not applicable to the situation here presented. Here Becker did see defendant's car and exercised what the jury found to have been a reasonable judgment that he could proceed with safety, based on relative speed and the fact that defendant was required to stop before entering the intersection. It is our conclusion that there was a jury issue with respect to the negligence of plaintiff's driver. *Trautmann v. Charles Schefft & Sons Co.* 201 Wis. 113, 228 N. W. 741.

The next assignment of error is that the comments and conduct of plaintiffs' counsel during the course of the trial were calculated to prejudice the jury, and that this is reflected in the high award of damages made in this case. The alleged improper conduct did not occur during arguments to the jury. It consisted of isolated remarks by counsel during the course of the trial.

For example, on one occasion when defendant's counsel was examining an exhibit the plaintiffs proposed to offer in evidence, counsel for plaintiffs made some remark intimating that defendant's counsel was taking all morning to examine the exhibit. During David Becker's examination, defendant objected to his testifying as to complaints made by

his mother. This elicited the following comment by plaintiffs' counsel: "I don't suppose you would contend she was dancing around, either." At the close of the testimony of Dr. Fidler, defendant's expert, who testified that he had removed hundreds of foreign bodies from patients but only one needle from the spine, plaintiffs' counsel remarked: "Not much of an expert—only one needle removed from the spine." During the cross-examination of one of defendant's experts, and after the latter had indicated his agreement with counsel on some medical proposition, plaintiffs' counsel stated: "It is a little hard to make him, but I think I can." On another occasion when defendant's counsel made an objection, plaintiffs' counsel replied: "You aren't talking to yourself again, are you?"

We have no hesitation in characterizing the foregoing as an exhibition of bad manners, unbefitting the dignity of a lawyer and officer of the court. In defendant's brief, however, there is a statement which indicates the disadvantage under which this court operates in concluding that prejudice against defendant was aroused by the conduct of counsel. Defendant states: "The printed record fails utterly to reproduce the mannerisms used in the play to the jury." This situation nearly always obtains. In order for this court properly to assess the result of conduct such as is here under consideration, it is necessary to perform the nearly impossible task of reconstructing a situation which is only partly disclosed by the record. The tone of voice, the mannerisms, the provocation for the remarks. if any, do not appear; and, unless the substance of the remark can be held intrinsically prejudicial, only the trial court can appraise the results of the misconduct. In the few cases where this court could say that the substance of the remarks made during the course of arguments to the jury or examination of witnesses, wholly separate from the manner of utterance or the particular at-

mosphere of the situation, had a prejudicial tendency and where this effect was demonstrated or confirmed by verdicts which were against the great weight and clear preponderance of the evidence or made excessive awards of damages, this court has set aside verdicts and ordered new trials.

The remarks involved here are equivocal, and their result can only be assessed in the light of the situation existing when they were made. Generally speaking, they were merely sarcastic and discourteous and belong to the class of tactics which are quite as apt to operate to the disadvantage of the client whose counsel makes them as they are to create prejudice in his favor. It is the duty of the trial court to appraise the effect of such conduct, and to take such steps as his judgment dictates to preserve the integrity of the jury's verdict. It is evident that the trial court considered the remarks not to have had any important effects, and that a mere sustaining of objections to them would suffice. We cannot say that this conclusion was erroneous.

It is suggested that the award of damages in this case indicates that the jury were swayed by passion and prejudice presumably engendered by these remarks. However, for reasons that will hereafter be set forth, we think the high award was due to the form of submission and not to the remarks to which objection is made.

It is to be regretted that counsel in jury cases yield to the temptation to be caustic and discourteous. The fact that an appellate court, for reasons similar to those discussed here, may find it impossible to reverse a judgment by reason of these remarks, does not in any way operate as an approval of them. The objection to them is the same no matter what effect they may have on the jury. To the extent that they may tend to prejudice the jury in any way, they lead to determinations upon considerations wholly foreign to the merits.

The next assignment of error is that the court improperly submitted to the jury the issue relating to plaintiff's damages. The question submitted required the jury to assess the damages sustained by her:

"(a) For pain and suffering.
"(b) For loss of capacity to enjoy life, or any diminution of such capacity, as a result of the injury."

The jury answered: "(a) $8,000; (b) $7,000." The judge cut each award to $4,000 and gave plaintiff the option to accept a total award of $8,000 or submit to a new trial. The only instruction on this question was as follows:

"That is practically one question divided up, and I want to call the jury's attention to the fact that these two elements should be considered together in arriving at your verdict. I think I will read on to the next question."

This form of submission was confusing and improper. The elements of damage concerning which separate inquiry is made are so far duplicates of each other as to make it evident that any answers to the questions in the form submitted would lead to duplicate awards. This difficulty was not obviated by the instruction heretofore quoted, which, while reaffirming what was implied by the separate submission, namely, that the elements are wholly separate, required that they be considered together in arriving at a verdict. The jury assessed slightly different damages upon the two subdivisions, indicating that they found or constructed some basis for distinguishing the two elements, and a total award was made which the trial court found necessary to cut nearly in two.

It is evident to us that the jury was not actuated by passion and prejudice operating to nullify the whole verdict, but that they were confused by the form of submission and instruction, and thus led to make an award upon some undisclosed but evidently improper basis. The situation is not

helped by the option given plaintiff to accept $8,000 as the lowest sum that a jury, properly instructed, would reasonably award. There is evidence to the effect that the difficulties caused by the presence of the needle were not so much pathological as psychological; that it is practicable to remove the needle and put an end to a large portion of future pain and suffering which might otherwise result. A much lower verdict than $8,000 would stand against the contention that it was inadequate, and we are not persuaded that $8,000 is the lowest sum that an impartial jury, properly instructed, would reasonably award.

Since the objections to the jury's award of damages are referable only to the manner in which this issue was submitted, and since no other error appears, it is concluded that there should be a new trial in the Bertha Becker case upon the question of damages only. In the Rudolph P. Becker case we discover no error, and it follows that the judgment in that case should be affirmed.

*By the Court.*—The judgment in the action of Bertha Becker against Marie Luick is reversed, and cause remanded for a new trial on the question of damages only. Judgment in the case of Rudolph P. Becker against Marie Luick is affirmed. No costs to be allowed to either party. Respondent to pay the clerk's fees.

A motion for a rehearing was denied, with $25 costs, on March 3, 1936.