Ziemke (Emilie), Respondent, vs. Faber and others, Appellants: Ziemke (Herbert), Interpleaded Defendant and Respondent.

*March 2—June 2, 1936.*

*Geo. W. Taylor* of Kenosha, for the appellants.

For the respondents there was a brief by *Gittings, Janecky & Buelow* of Racine, and oral argument by *Earl F. Buelow*.

The following opinion was filed March 31, 1936:

FOWLER, J.    The appellants assign numerous grounds of error, one of which is that the findings of the jury as to the negligence of Robert Faber, the driver of the automobile, is without support in the evidence, and that their motions after verdict for judgment of dismissal should have been granted. This ground is in our opinion well taken and we need not consider any of the others.

The only testimony, except as to physical facts, bearing upon the negligence of Robert is that of Robert himself and that of Herbert Ziemke, the driver of the truck. Robert testified that he approached the intersection slowly, and that as he came to within thirty feet of the center of the intersection he changed into intermediate gear, as he was going up hill. When twenty feet from the center of the intersection he saw Ziemke approaching about ninety feet away. Robert had the right of way under sec. 85.18, Stats., and might rightly assume that Ziemke would not interfere with his passage. He thought he had ample time to cross ahead of Ziemke and proceeded to do so. He did not stop, but there was no stop sign, and nothing in the circumstances requiring him to stop. When he arrived at a point about four feet south of the center lines of the roads, the right corner of the truck struck the left front wheel of the automobile. The impact stopped the automobile and turned it so it faced west. The truck struck and was stopped by the guardrail. The sudden stop of the truck threw its rear up and it came to rest facing south with its front against the guardrail and its rear on the top of the automobile with its hind wheels off the ground. Both Mr. and Mrs. Ziemke were thrown clear of the truck by the stopping of the truck and the force of the impact against the guardrail. The force of the impact broke the two-by-eight-inch plank of the guardrail. The automobile was going about ten miles per hour when the collision occurred. Robert was on his right side of the road. Ziemke was on his own side of the road ninety feet away, but turned left onto the other side before the impact. Robert saw the truck when it was half way from where he first saw it to the point of collision and just before the impact. Skid marks of the truck were plainly visible on the hard road. They extended twenty paces back from the point of impact, shallow for a way and deep for the rest of the way up to where the truck stopped. The deep marks extended back fifteen paces.

The physical facts as to the length of the skid marks and the position of the cars and the condition of the guardrail as above stated were corroborated by a deputy sheriff and by another witness who arrived at the place before the cars were moved. Both witnesses testified that the skid marks crossed from the north to the south side of the east and west road. Photographs of the cars show the right front of the truck caved in and badly damaged and the left front of the automobile slightly damaged.

Ziemke admits in his testimony that he turned left in front of the automobile when he could have avoided the collision by keeping right and going behind it. He saw the truck when he was eighty feet from the intersection of the center lines of the two roads, but at that time made no effort to stop his truck or yield the right of way. Robert was "slowed down" and he "figured" Robert saw him, thought Robert was going to stop, and kept straight on. He claims to have applied his brakes slightly so as to reduce his speed to get control of his truck. When twenty feet from the automobile he first realized Robert was coming ahead and he then turned his car to the left. He claims to have been coming up the hill before arriving at its crest at about twenty-five to thirty miles per hour and to have continued at that rate down the other side of it until he saw the automobile when he applied his brakes slightly. He could feel his wheels sliding for fifty or sixty feet. He claimed to have cut his speed down to fifteen or twenty miles per hour by applying his brakes. He testified he could have stopped, but could not say that he could have stopped twenty feet from the place of collision or not. He thought it would take him thirty feet to stop going ten or fifteen miles per hour down the hill. He was watching the other car all the time. He testified: "When I was twenty feet from the Faber car, going fifteen or twenty miles per hour, I could have turned right and gone north or back of the Faber car."

He corroborated the testimony of the other witnesses as to the positions of his truck after the accident, except that he said he did not think its front was against the guardrail. He did not remember whether he saw the guardrail before the collision or not.

The jury found that Ziemke was not negligent as to speed, lookout, as to his place on the road or management and control of his car, but that he was negligent in respect to yielding the right of way. They also found that his negligence was only twenty-five per cent as compared to Faber's seventy-five per cent. Ziemke's own testimony convicts him of negligence in every respect covered by the verdict except as to speed, and the undisputed physical facts convict him of negligence as to speed. He cannot be excused for his conduct on the ground of emergency, because whatever emergency existed was created by his admitted negligence in not so controlling his car as to yield the right of way as the statute required. We cannot escape the conclusion that from the entire evidence no reasonable conclusions can be drawn other than that Faber was not guilty of any negligence and that the collision was caused solely by the negligence of Ziemke. Faber's testimony, not disputed in any particular, not being inherently unreasonable, and being supported for the most part by physical facts, the jury might not rightly reject it and find him negligent as to lookout and management and control of his car without any evidence whatever upon which to base such findings. It follows that the judgment must be reversed, and the verdict set aside, and the complaint dismissed.

*By the Court.*—The judgment of the circuit court is reversed, with directions to set aside the verdict and enter judgment dismissing the complaint.

A motion for a rehearing was denied, with $25 costs, on June 2, 1936.