Kilcoyne, Administratrix, Respondent, vs. Trausch and others, Appellants.

*September 16—October 13, 1936.*

For the appellants there was a brief by *Kopp & Brunck-horst* of Platteville, and oral argument by *Arthur W. Kopp*.

For the respondent there was a brief by *McDaniel & Olson* of Darlington, and oral argument by *F. E. Olson*.

FRITZ, J.   The Ohio Casualty Insurance Company (hereinafter referred to as the insurer) was joined as a defendant on the ground that it had issued to the defendant copartners an automobile liability policy covering the automobile truck involved in a collision in Wisconsin, which resulted in the death of Louis Kilcoyne.   In a plea on the ground that the action was prematurely instituted against the insurer, it alleged that the insurance policy, upon which plaintiff relied, was made and issued in the state of Iowa to the defendant copartners, doing business at Dubuque, Iowa; that the policy had a no-action clause (substantially like the clauses involved in *Morgan v. Hunt,* 196 Wis. 298, 220 N. W. 224; *Bergstein v. Popkin,* 202 Wis. 625, 233 N. W. 572; and *Byerly v. Thorpe,* 221 Wis. 28, 265 N. W. 76), which was set forth in the plea; that by virtue of that clause no action lies against the insurer until liability has been fixed and determined as set forth in that clause; that the laws of Iowa then and since provide that, under such an indemnity policy, the insurer does not become liable and cannot be sued until the loss has actually been ascertained and fixed against the assured, either by final judgment against the assured or by agreement between the parties with the written consent of the company; that, under such an indemnity policy, a third person cannot maintain an action against the insurer before the liability against the insured is ascertained and fixed by final judgment or an agreement; that the amount of such loss, by

reason of plaintiff's claim herein, has not been determined or fixed, either by such a judgment or agreement; and that, therefore, the action was prematurely instituted as against the insurer.

On March 22, 1935, plaintiff noticed a motion for an order dismissing the plea in abatement on the grounds, (1) that it does not state facts sufficient to constitute a defense; (2) that the plea was a procedural matter and was, therefore, governed by the laws of Wisconsin, and especially secs. 85.93, 260.11, and ch. 263, Stats.; and (3) that the Wisconsin laws relating to procedure do not conflict with the United States constitution. Neither the policy nor a copy thereof was ever made part of plaintiff's motion papers or a part of the record by any subsequent procedure herein. Arguments on plaintiff's motion to dismiss the plea were made in court on April 27, 1935. On May 1, 1935, one of plaintiff's attorneys made an affidavit that on their demand defendants had furnished a copy of a policy, which was referred to on argument of motion to dismiss, but that it was not filed in court as part of the record; and that it will be necessary in making a determination of the plea that the policy be filed and that the hearing be reopened so as to permit plaintiff to amend her motion and include a reference to the policy, and especially clause "V" therein. On May 3, 1935, plaintiff obtained an order to show cause why relief should not be granted in the several respects stated in that affidavit. However, no hearing was ever held, and no relief ever granted, pursuant to that order to show cause. On September 4, 1935, the court ordered the dismissal of the plea in abatement. Neither then nor thereafter was anything further done in relation to the plea in abatement or to complete the record in that respect.

Under those circumstances, on this appeal the order sustaining the plea in abatement must be passed on in view of the facts stated in the plea. Plaintiff's motion for the dis-

missal thereof, on the grounds specified by plaintiff, was in effect a demurrer, upon which the facts alleged in the plea are deemed admitted, and will be so considered on a review of an order sustaining the motion. *Williams v. Journal Co.* 211 Wis. 362, 365, 247 N. W. 435. Neither on the hearing of such a motion nor on the appeal from an order granting it, can the court take into consideration alleged matters of fact, which were not duly made a part of the record. Consequently, no other alleged provision of the policy than the no-action clause, set forth in the plea in abatement and thus properly made part of the record, can now be taken into consideration. *Schroeder v. State, ante,* p. 251, 267 N. W. 899, 904.

As it appears from the plea in abatement that the policy was written and issued in Iowa to the defendant copartners, whose place of business was at Dubuque, Iowa; that the policy had a no-action clause, which was in substantially the form involved in *Morgan v. Hunt, supra, Bergstein v. Popkin, supra,* and *Byerly v. Thorpe, supra,* and under which, as was held in those cases, the insurance carrier had the right not to be sued until the damages were first ascertained in the manner specified in that clause; and that, under the laws of Iowa, no action could be commenced, and the insurer did not become liable, until after liability of the insured was first fixed by judgment or agreement, the court should have denied plaintiff's motion to dismiss the plea and should have sustained the plea. See *Byerly v. Thorpe, supra.*

On their appeal from the judgment entered in favor of the plaintiff, the defendants contend that, upon the trial on the merits, the court erred in failing to hold, upon defendants' motion for a directed verdict and upon their subsequent motion for judgment *non obstante veredicto,* that, as a matter of law, Louis Kilcoyne was negligent in several respects; that such negligence caused the collision and his resulting

death; that the driver of the defendant copartners' truck was not guilty of any causal negligence; and that in any event Kilcoyne's causal negligence was greater, as a matter of law, than any such negligence on the part of that driver.

Louis Kilcoyne was killed on October 8, 1934, as the result of a collision between a Ford truck, which he was driving, and a Chevrolet truck belonging to the defendant copartners, which was being driven by Thomas Rooney, with his helper Louis Ring sitting to his right in the cab. Kilcoyne was hauling a load of barrels and bottles of beer, and Rooney was hauling bakery products. There is no substantial conflict in the evidence. Kilcoyne died shortly after the collision, and the only eyewitnesses thereof who testified on the trial, in addition to Rooney and Ring, were two disinterested witnesses, Melvin McGee and Donald Peaseley. The collision occurred at the intersection of County Trunk I, which extended north and south, and Highway No. 11, which ran in a northwesterly and southeasterly direction. The traveled portion of No. 11 was twenty-two feet wide and of Highway I was but little more than a one-way road. Neither highway had been designated as an arterial, but an unofficial stop sign had been placed on Highway I seventeen feet north of the center of No. 11. Buildings and trees on private property at the northeast corner of the intersection materially obstructed the view northward on Highway I of the westbound traveler approaching on No. 11, and likewise obstructed the view eastward on No. 11 of a southbound traveler approaching on Highway I. The westbound traveler on No. 11 would not have a clear view of traffic approaching the intersection from the north until he was within fifty feet of it; and the view eastward of a southbound traveler on Highway I was similarily obstructed, but from the stop sign he could see a car approaching on No. 11 as far east as two hundred sixty-six feet.

The uncontradicted evidence establishes that Rooney, after halting the Chevrolet at the stop sign, drove south at a speed gradually increased from five to fifteen miles per hour until, when that sixteen feet long truck was entirely within the intersection, the rear left wheel and front part of the rear left fender thereof were struck at right angles by the front bumper, headlights, and radiator of Kilcoyne's truck, traveling westward and partly to the south of the center of the traveled portion of No. 11. That truck came to a stop facing to the west and south of that center line. The Chevrolet tipped over onto its right side in the corner southwest of the intersection, with its front wheels in a ditch, and its rear end on a shoulder of the road at that corner.

In answer to questions in a special verdict, the jury found that the collision was caused by negligence on the part of Rooney, in respect to keeping a proper lookout and yielding the right of way; that Kilcoyne was not negligent in either of those respects, or failing to drive on his right side of the road; and that all of the causal negligence was attributable to Rooney. The court approved those findings, upon the motions after verdict, and ordered the judgment thereon.

Our review of the record discloses that there was evidence which admitted finding that Rooney was negligent in respect to keeping a proper lookout. Although he and his helper testified that when they halted at the stop sign they looked to the east, and did not see Kilcoyne's truck, until it was but forty or fifty feet east of them, and their truck was already in the middle of the intersection, there is in the record a photograph and the photographer's testimony, from which it appears that a westbound car, approaching on No. 11, could be seen by a driver halting at that stop sign, when it was as far as two hundred sixty-six feet to the east of that sign. In view of that evidence as to Rooney's opportunity to see Kilcoyne's truck as it approached, it was within the jury's

province to find that Rooney, in the exercise of ordinary care, ought to have seen that truck in time to avoid the collision; and that Rooney's negligence in that respect was at least a contributing cause of the collision.

However, the evidence does not admit of the jury's finding that Rooney was negligent in respect to yielding the right of way. On the contrary, it is conclusively to the following effect: The Chevrolet, starting at the stop sign seventeen feet north of the center of No. 11, and approaching at a speed which, as it proceeded, increased from five to fifteen miles per hour, was at least six to eight feet in the intersection before Kilcoyne's truck ever entered it; and, at the moment of the impact, the sixteen-feet long Chevrolet was entirely within the twenty-two feet wide traveled portion of No. 11 and on the west half of Highway I, and all but the rear left wheel and fender of that truck had cleared Kilcoyne's pathway as he approached, straddling the center of the traveled part of No. 11. Those facts establish conclusively that the Chevrolet truck must have been well within the intersection, and even partly to the south of the north half thereof, before Kilcoyne's truck entered it. Furthermore, McGee's uncontradicted testimony is that, when Kilcoyne was one hundred feet east of the intersection, he was approaching at a speed of twenty-five to thirty miles per hour; and Peaseley testified that Kilcoyne's speed was twenty-five miles per hour when he was still forty feet east of the Chevrolet, which was then crossing the intersection. Under those circumstances, Kilcoyne, approaching on the left of Rooney should, in the exercise of ordinary care, and in order to avoid violating sec. 85.18 (1), Stats., have yielded the right of way to Rooney. As the latter was driving at a lawful rate of speed, and had done nothing to indicate that he intended to yield his right of way, and in the exercise thereof had lawfully entered the intersection before Kilcoyne, who

was approaching apparently at a speed which should have enabled him to stop in time to avoid a collision, if he exercised due care, Kilcoyne was not entitled to assume that Rooney would yield his right of way, and the latter was not negligent in not doing so. Consequently, the trial court should, as a matter of law, have held that Rooney was not negligent in that respect, *Ziemke v. Faber,* 221 Wis. 512, 266 N. W. 217; *Becker v. Luick,* 220 Wis. 481, 264 N. W. 242; *Huber v. Hinzpeter,* 206 Wis. 456, 240 N. W. 157; and that Kilcoyne was guilty of causal negligence in violating sec. 85.18 (1), Stats., by his failure to yield the right of way. Furthermore, those facts and circumstances, in connection with the facts that, because of trees and houses at the northeast corner of the intersection, there was a blind corner which prevented Kilcoyne from having a clear view of traffic approaching from the north, and that for at least one hundred feet east of the intersection to the place of the collision he continued to approach without any diminution in his speed so as to permit him to stop "within one-half of the distance within which he was able to see approaching traffic," clearly establish that he was also guilty of causal negligence in violating sec. 85.40 (4), Stats., which provides:

"In traversing intersections where the operator does not have a clear view of approaching traffic on the intersecting highway or highways, the speed of such vehicle shall not be greater than that which will permit the operator to stop within one-half of the distance within which he is able to see approaching traffic."

The manner in which Kilcoyne's truck ran, with considerable momentum and force, squarely into the Chevrolet, which, during all of the time that it was traversing the twenty-two feet south of the stop sign at a speed of but five to fifteen miles per hour, was clearly visible to Kilcoyne while he was approaching the intersection, demonstrates that the latter's

speed was so great that it did not permit him to stop within one half of the distance within which he was able to see approaching traffic, and that his violation of sec. 85.40 (4), Stats., in that respect was a contributing cause of the collision. *Paluczak v. Jones,* 209 Wis. 640, 245 N. W. 655.

The evidence also conclusively establishes that Kilcoyne was driving his truck partly to the left of his right half of the road as he approached the intersection and collided with the Chevrolet. In that respect he violated sec. 85.15, Stats., without any excuse or justification. As that constituted negligence, as a matter of law, the court also erred in submitting that issue to the jury. However, his negligence in that respect was not necessarily a cause of the collision, in view of his negligence in the other respects, which could be deemed to have rendered the collision so inevitable that he would have been unable to avoid it, even if he had been driving entirely on his right side of the road.

Appellants also challenge the jury's finding that Kilcoyne was not negligent in respect to lookout. In as much as the jury found Rooney negligent in failing to observe the approach of Kilcoyne's truck sooner, and Kilcoyne had apparently as good and early an opportunity to observe the Chevrolet's approach, it is difficult to understand why Kilcoyne was not likewise negligent in respect to lookout. However, as there was no direct evidence as to what he in fact observed or failed to observe, and as to what his acts or omissions were in that particular respect, the determination of that issue was dependent wholly upon inferences, which it was within the province of the jury to draw from other facts and circumstances. Under those conditions it cannot be said that, as a matter of law, Kilcoyne was negligent in respect to lookout.

The issue as to comparative negligence was submitted for a special verdict, but the jurors were not in position to pass intelligently upon that issue because they had not been in-

structed that there was causal negligence on Kilcoyne's part, as a matter of law, in the respects stated above. That issue should have been determined, in view of the extent to which the collision was attributable to Kilcoyne's causal negligence, in two distinct respects; *i. e.*, (1) his failure to yield the right of way in violation of sec. 85.18 (1), Stats.; and (2) his violation of sec. 85.40 (4), Stats., by driving at a speed greater than that which permitted him to stop within one half of the distance within which he was able to see approaching traffic at the intersection,—as compared to the extent to which it was attributable to Rooney's causal negligence in not keeping a proper lookout. In view of the nature and obvious consequences of the negligence chargeable to each, the collision was so clearly attributable to a greater extent to Kilcoyne's negligence in those two very material respects, than it was to the single respect in which Rooney was negligent, that the court should have so held on the issue of comparative negligence, as a matter of law, as was done in *Zenner v. Chicago, St. P., M. & O. R. Co.* 219 Wis. 124, 262 N. W. 581; *Lese v. Chicago & N. W. R. Co.* 154 Wis. 547, 143 N. W. 676. Kilcoyne's negligence, in the respects stated above, continued to be operative, as a direct cause of the collision, from the time he approached the intersection up to the moment of the impact. Rooney's negligence, on the other hand, existed only by reason of his failure to see Kilcoyne's truck before it arrived at a point forty or fifty feet east of the Chevrolet, and the latter entered the traveled portion of No. 11. With the vehicles still in those relative positions, the collision had not as yet been rendered inevitable by reason of Rooney's negligence up to merely that time. Even then, with Kilcoyne's truck still forty to fifty feet east of the Chevrolet, the collision could still have been avoided by Kilcoyne but for his negligence in continuing to violate sec. 85.40 (4), Stats., by failing to reduce his speed as therein prescribed,

and by failing to yield the right of way in compliance with sec. 85.18 (1), Stats., by either stopping his truck or turning it a few feet to the north to enable the Chevrolet to pass in safety. Consequently, upon the question of comparative negligence, Kilcoyne's causal negligence must, as a matter of law, be considered as great at least as Rooney's negligence, and, therefore, plaintiff's complaint must be dismissed.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.