LEVNER, Respondent, vs. NORTHLAND-GREYHOUND LINES, INC., Appellant.

*May 10—June 6, 1939.*

For the appellant there was a brief by *Bendinger, Hayes, Kluwin & Schlosser* of Milwaukee, and oral argument by *Gerald F. Hayes*.

For the respondent there was a brief by *Rubin, Zabel & Ruppa,* attorneys, and *Wm. B. Rubin* and *Irving A. Lore* of counsel, all of Milwaukee, and oral argument by *Mr. Rubin* and *Mr. Lore*.

WICKHEM, J.   On August 16, 1934, at 1:45 in the morning, plaintiff was a passenger on a bus of defendant line. The bus was on its way to Milwaukee, and at the time of the collision was proceeding west on Dempster road in the incorporated village of Morton Grove, Illinois.   The accident happened at a "T" intersection in the village.   This intersection is formed by Ferris avenue, which comes from the south to join Dempster road at a right angle and terminates there.   Dempster road is an arterial highway.   The intersection was lighted by an overhead street lamp.   Dempster road is a four-lane concrete highway with graveled shoulders on each side.   Ferris avenue is of equal width.   On the night of the accident the weather was clear, and while the pavement was damp it was not slippery, and it is conceded that the pavement offered no difficulties in stopping or braking vehicles.   The car with which the bus collided was a Ford sedan and had four male occupants and one woman guest. The four men had met earlier in the evening at a bowling alley and had gone to a tavern and then to the Arcadia Gardens about 11 p. m.   At the tavern they had met Miss Elsie Bowers, who went into the Gardens with two of the party and stayed there until 1 o'clock, talking and drinking. Whether the driver of the car had been drinking and, if so, to what extent is not disclosed by the record.   At 1 o'clock the five young people started for an automobile ride without any particular destination.   The car was ultimately driven north on Ferris avenue, ran through the arterial stop sign, made no attempt to turn at the "T" intersection, collided with the bus, and ultimately struck a telephone pole.   Three of its occupants were killed.   Immediately prior to the collision the car was seen speeding in a zigzag course in excess of thirty-five or forty miles an hour.   The bus struck the Ford in the middle of its right side.   As it approached the intersection from the east the bus was going at the rate of thirty to thirty-five miles an hour upon a highway which permitted a speed of thirty-five miles per hour.   A tavern

located on the southeast corner of the intersection and a five-foot fence inclosing the yard behind the tavern interfered somewhat with the driver's view as he approached the intersection. However, at a point about seventy-five feet east of the intersection his view was unobstructed for a distance of twenty feet south of the intersection. At a distance of twenty feet east of the intersection his view had increased to seventy-five feet and of course increased from there on. He first observed the car as it was coming out of Ferris avenue on the right side of the road at a high rate of speed. He was at that time about to enter the intersection. He immediately applied the brakes but did not have them fully set by the time the impact occurred. The impact broke the steering apparatus of the bus and cramped the wheels to the right. The braking apparatus of the bus was damaged. The bus stopped about fifty to sixty-five feet beyond the place of impact. Plaintiff was thrown out of her seat and sustained injury.

The circuit court ordered a new trial for misdirection in two respects. (1) A failure in connection with an instruction that the defendant's bus had the right of way to state the qualification "that one having the right of way must forego the exercise of that right when it becomes apparent that the driver of the other vehicle is so proceeding as to indicate that he has no intention to yield the right of way," etc. (2) An erroneous instruction that,—

"In law he was not bound to anticipate that another automobile driver would intentionally or unintentionally interfere with the lawful operation of the bus along the street. You will understand, members of the jury, as I have just instructed you, that common carriers are rightfully held to a high degree of diligence but they are not held responsible for the lawless acts of other persons not under their control, which they could not reasonably anticipate."

We conclude that the view of the circuit court was erroneous in both respects. Upon the first point we are satisfied

that the qualification was not germane to any issue of fact in the case. Right of way was not in issue under the facts. Concededly, defendant's driver had it. The record discloses beyond reasonable controversy that defendant's driver did not insist on exercising his right of way in the face of an apparent intention on the part of the driver of the Ford to disregard it. If there was negligence upon the part of defendant's driver, it consisted of the defaults which were submitted to the jury, namely, speed, lookout, and control. After defendant's driver saw the Ford he did not seek to hold the right of way. He immediately put on his brakes and attempted to stop. Whether he exercised sufficient care and skill in this respect goes to the question of negligent management and control. Whether his car was going too fast at the moment has to do with the issue of speed. Whether he saw the situation in time to take effective action bears on the issue of lookout. Under no circumstances, however, so far as the record discloses, is the suggested qualification applicable to him, because as heretofore stated, he did not, after seeing the Ford, attempt to claim his right of way in the face of apparent danger. So much of the instruction on right of way as was given had a useful bearing upon what defendant's driver should have anticipated as he approached the intersection and before he saw the Ford car. The qualification had no bearing whatever upon the controversy and was properly withheld by the trial court. See *Lehner v. Berlin Publishing Co.* 211 Wis. 119, 246 N. W. 579; *Madison Trust Co. v. Helleckson,* 216 Wis. 443, 257 N. W. 691; *Catlin v. Schroeder,* 214 Wis. 419, 253 N. W. 187.

The conclusion of the circuit court that an erroneous instruction was given raises more difficulty. It is literally true that defendant's driver is not bound to anticipate unlawful interference with his course, and it is just as true that this does not excuse him from exercising proper care with respect to lookout, speed, and control, or from revising his expectations when it becomes apparent that the competing

driver does not propose to respect his rights. The instructions as a whole were accurate and beyond substantial criticism in so far as they define the defendant's duties with respect to lookout, speed, and control. The jury was not instructed that these duties were in any way modified by defendant's right to anticipate that others would respect his rights. The only situation in which the qualification could be important was one in which the other driver by his dangerous manner of driving gave evidence that he was not going to respect defendant's rights of travel. Thus, we reach with respect to this point the same difficulty and the same conclusion as was reached with reference to the omitted qualification to the instruction on right of way. When defendant's driver first saw the Ford there was no doubt that it was being driven recklessly and dangerously, and no doubt that defendant's driver appreciated what was about to happen. There was then nothing to do but attempt to stop the bus, and this attempt was made. Whether the jury were entitled to conclude that this duty was properly discharged will be discussed later. It is evident, however, that if it was not, the default was not in drawing proper conclusions from the apparently reckless manner in which the other car was driven. It was a failure to look seasonably or to maintain a proper speed or to act with sufficient promptness and skill after the danger was apparent. If defendant's driver was guilty of either of the first two defaults, the fact that he had no time after seeing the Ford to accommodate himself to its evident intentions would not exonerate him. His negligence, if any, was not a failure to interpret the intentions of the Ford driver after he saw the Ford and to properly appreciate the danger involved. For this reason we consider the qualification not to be germane to any issue of fact in this case, and the failure to give it was not prejudicial error.

Appellant's next contention is that it was entitled to a directed verdict for the reason that there was no evidence of negligence on the part of the defendant's driver. On the

other hand, plaintiff contends in her motion for review that defendant's driver was guilty of negligence as a matter of law, and that the trial court should have given an affirmative answer to each of the three questions relating to defendant's negligence. In view of the fact that we consider that plaintiff was not entitled to a new trial upon the ground of misdirection, it is, of course, unnecessary to discuss appellant's contention that it was entitled to a directed verdict. Appellant had a favorable verdict, and if there was no error the original judgment should be affirmed. It is, however, necessary in response to plaintiff's motion to consider whether there was any jury issue that would prevent the court from directing a verdict for plaintiff, and it may be that in discussing this point there will necessarily be some consideration of appellant's contentions, immaterial though they may be.

Considering first the jury's finding with respect to speed, it is our conclusion that the evidence warranted the jury in finding that the bus was driven well within the speed permitted by law upon the particular highway in question, and that its speed was not hazardous or negligent in view of the state of traffic, the nature of the highway, and the other circumstances existing at the time. This accident took place at a time when there was very little traffic upon the highway. While the pavement was wet, there is evidence that this condition produced no problems of braking or maneuvering the bus. The street was a four-lane highway, and defendant's bus was traveling within a few feet of the closed top of the "T" intersection. Any person approaching this highway along Ferris avenue was required by law to stop before entering the intersection. If such a car proposed to turn right it had three lanes in which to turn, and there was no reasonable likelihood of collision with defendant's bus, which was on the fourth lane. If it turned left, the situation would be substantially the same. While in the latter case there

might be somewhat greater chance for collision because of the fact that the bus driver would be proceeding in the same direction as the car entering from Ferris avenue, this would be somewhat balanced by the fact that the car would enter from one of the middle lanes and be in sight for a longer distance before entering the intersection. The chances of collision in any event would seem to be very slight and to fall within the field of possibilities rather than reasonable probabilities. About the only really dangerous situation would be created by the extremely unlikely circumstance that a car proceeding at a high rate of speed would fail to stop at the arterial, fail to appreciate that this was a closed intersection, and proceed across the intersection into the path of the bus. The jury was certainly entitled to conclude that even though the bus driver owed the especially high duty of care imposed upon common carriers he was not negligent prior to seeing the Ford in failing to diminish his speed to take care of this extremely unlikely possibility. Much that is said with respect to speed is applicable to the jury's conclusions with respect to lookout, although this is a closer question. Due to the obstruction on the southeast corner of Ferris avenue and Dempster road the bus driver at a distance of seventy-five feet from the intersection had a view of only twenty feet south on Ferris avenue, and he was within twenty feet of the intersection when his view enlarged to seventy-five feet. This state of visibility of the intersection, in connection with evidence of the high speed at which the Ford was driven and the other circumstances heretofore detailed concerning the nature of the intersection, made it at least a jury question whether the bus driver discharged his duty of due care as to lookout. The only basis upon which want of lookout can be urged is that the driver took an observation from seventy-five feet back of the intersection, and that evidently he did not make an adequate observation after that time. We held in *Olk v. Marquardt,* 203 Wis.

479, 234 N. W. 723, that one who is proceeding with ordinary care to a point where he can see to his left a sufficient distance to insure him that anyone coming from beyond traveling at a reasonable rate of speed will not interfere with his crossing of the highway may rightfully proceed on the assumption that his right of way will be respected. See also *Pichler v. Ladwig,* 194 Wis. 535, 217 N. W. 320; *Becker v. Luick,* 220 Wis. 481, 264 N. W. 242. Under the rule of these cases, and in view of the circumstances heretofore discussed, there was a jury question whether defendant's bus driver did not fully discharge his duties with respect to lookout. At seventy-five feet there was no car in sight approaching the intersection. No car traveling at a lawful and reasonable rate of speed but beyond that point and out of sight would be in a position to create any peril in view of the facts, (1) that he would have to stop at the intersection, and (2) that due to the width of the highway and the fact that it was a "T" intersection he could only turn right or left with three full lanes of traffic between him and the defendant's driver. In view of this the jury was entitled to conclude that defendant's driver adequately discharged his duty as to lookout.

The issue of management and control concerns only the conduct of the bus driver after he had seen the Ford. Evidence that when the driver saw the Ford it was entering the intersection at a speed so great that it was just a flash and that the defendant's driver immediately attempted to put on his brakes is enough to make a jury question. The Ford was moving at a high speed on the right-hand side of the road which meant that it was in the northbound lane nearest the bus. Considering that it required on the part of defendant's driver a fraction of a second to appreciate the situation and another to put on the brakes, we cannot say that a jury might not reasonably have concluded that the accident was

inevitable by the time the presence of the Ford at the intersection was observed.

It is our conclusion that the evidence supports the verdict, and that plaintiff was not entitled to a directed verdict upon the questions relating to liability.

*By the Court.*—Order reversed, and cause remanded with directions to affirm the judgment of the civil court.