Argued January 10; affirmed January 30; rehearing denied
April 16, 1940

# BOGART *v.* COHEN-ANDERSON MOTOR CO., INC.

(98 P. (2d) 720)

234

Department 2.

*William P. Lord*, of Portland (T. Walter Gillard and Claire Wallace, both of Portland, on the brief), for appellant.

*Frank S. Senn,* of Portland (Senn & Recken, of Portland, on the brief), for respondent.

BELT, J.  This is an action to recover damages for personal injuries resulting from an automobile accident alleged to have been caused by defective brakes. A verdict was directed for defendant, and from the judgment entered thereon, the plaintiff appeals.

Cohen-Anderson Motor Co. is a corporation engaged in business in the city of Portland of selling new and used automobiles. On October 23, 1937, J. H. Medler, a salesman for the defendant company, delivered a used Terraplane coupe to one W. E. Bogart, the husband of plaintiff, in order that he might test it out. Mr. Bogart was a prospective purchaser and was experienced in driving automobiles. It was understood by the defendant that plaintiff would accompany her husband on the demonstration trip.

Bogart and his wife left Portland in the car on Saturday afternoon en route to one of the coast beaches. No representative of the defendant accompanied them. When Bogart had driven the car about fifty miles from Portland and was approximately one and a half miles west of Sheridan, the accident occurred in which plaintiff was injured.

It is the contention of plaintiff that the proximate cause of the accident was the defective condition of the brakes. The defendant company denies that the brakes were defective, and alleges affirmatively that whatever injuries plaintiff sustained were the result of the careless and negligent manner in which her husband operated the car. It is also urged by defendant that, assuming the brakes were defective, there is no evidence that defendant knew or ought to have known that they were in a dangerous condition.

■ At the threshold of the case it is important to determine the status and relationship of the parties, as by so doing the legal duties and obligations of the defendant automobile dealer may be stated. It is clear that there is no relationship of principal and agent or master and servant involved. It is a gratuitous bailment wherein the bailor and bailee are mutually benefited. Undoubtedly the automobile dealer considered that Bogart was in the market for a car and was a good prospect or he would not, in the ordinary course of business, have turned the car over to him for trial. It was an opportunity afforded the bailor which might eventually result in a profit. It is hardly in the same category as the case where A, as a matter of accommodation, loans his car to B for the exclusive benefit and pleasure of the latter. 3 R. C. L. 80. What is said, therefore, relative to the duties and obligations of the bailor, must be read in the light of the particular factual situation of the instant case.

■■ It is true there is no contractual relationship or privity of interest between the defendant and the plaintiff. The defendant's duties and obligations to the plaintiff, who stands in the same shoes as her husband, however, are created by operation of law and not by contract. The general rule is well established that an automobile dealer is not liable to a third person for the negligent operation of a car by a prospective purchaser. 4 Berry on "Automobiles" (7th Ed.) 440.

■ It is common knowledge that an automobile with defective brakes is, in view of its power, weight and speed, a dangerous instrumentality. Indeed, the legislature recognized such fact by requiring that "every motor vehicle * * * when operated upon a highway shall be equipped with brakes adequate to control

the movement of and to stop and hold such vehicle * * *" (§ 55-2613, Oregon Code 1935 Supp.)—the standard of adequacy being in subdivision (e) of the above section. An automobile dealer is not an insurer against the defective condition of a car put into the hands of a prospective purchaser, but he must use ordinary care to see that it is in a reasonably safe condition to use on the public highways. The failure to comply with this legal duty or obligation makes the bailor liable to third persons if the injury is the proximate result of such negligence. *Saunders System Birmingham Co. v. Adams,* 217 Ala. 621, 117 So. 72, 61 A. L. R. 1333; *Collette v. Page,* 44 R. I. 26, 114 Atl. 136, 18 A. L. R. 74; *Eklof v. Waterston,* 132 Or. 479, 285 P. 201, 68 A. L. R. 1002; 8 C. J. S. 318; *Vaughn v. Millington Motor Co.,* 160 Tenn. 197, 22 S. W. (2d) 226.

■ In order to establish a prima facie case—i. e. one sufficient to go to the jury, there must be some substantial evidence tending to show: (1) That the brakes were defective; (2) That such defective condition of the brakes was the proximate cause of the injury; (3) That the defendant knew or by the exercise of reasonable care ought to have known that the brakes were defective at the time the automobile was delivered to the plaintiff. If there is no substantial evidence tending to establish any one of the above essential elements, the cause is not entitled to be submitted to the jury.

■■ Let us now apply the above legal principles to the facts in the case. In determining whether the plaintiff has established a prima facie case, the evidence, and all reasonable inference that can be drawn therefrom, must be considered in the light most favorable to the plaintiff. Where different reasonable deductions can

be drawn from the evidence, the question is one for the exclusive determination of the jury. In the statement of the case no effort will be made to review in detail the conflict in the evidence.

■ Mr. Bogart, in describing how the accident occurred, thus testified:

"Q Then what next was called to your attention, or what did you do just before the accident?

"A We were coming around this curve and I automatically slowed down, as I do on all curves, and just as I got on the straightaway again and got straightened out, no traffic and I could see. Oh, 500 or 600 feet ahead of me, the road was clear and I kind of stepped on it a little mite, got up to about thirty-eight miles an hour and my wife says, 'You are going a little mite too fast, ain't you, for a new car?' something like that, and I automatically took my foot off the gas and partially touched the brake, just reached over with my toe and touched the brake.

"Q The moment you touched the brake, what happened?

"A It throwed me right up against the steering-wheel.

"Q Did you notice what happened to your wife at that moment?

"A My wife slid almost off of the seat.

"Q Then what happend to the car?"

"A It went to the right first and I pulled it back and got it lined up with the road again, and it went again, and I straightened it out the second time, but the third time I couldn't get it.

"Q What did the wheel feel like when you——

"A (interrupting) It felt like it was pulling. When you go to pull it back, you can't pull it against that power that is against you. The third time we went into the ditch.

"Q Yes. Was the car skidding, or not?

"A The car seemed to be jumping, just like that (illustrating). The back end of the car seemed to be gaining on the front end."

"Q  Was the car skidding like that or not?
"A  The back end seemed to be skidding around, pulling away."
"Q  How far did the car travel, as nearly as you can tell us, from the moment that you first put your foot on that brake until it finally ended up in the ditch?
"A  A very short distance.
"Q  Can you give us some estimate of the number of feet, approximately?
"A  Twenty-five feet."

The plaintiff, Mrs. Bogart, testified in substance that her husband drove in a careful manner and that he did not use the brakes, prior to the accident, in the trip from Portland. She said she smelled the burning of the brake lining on two occasions—the first time at McMinnville and the other just before the accident occurred. Mrs. Bogart said it "had started to rain a little bit". She said she told her husband: "We are going about thirty-eight miles. You are not driving too fast are you?" Whereupon he put his foot on the brake and the "back end just lifted up". Mrs. Bogart said when the car hit the ditch she was thrown "against the instrument board" and was injured.

Lester Haenny, a mechanic, testified that he saw the car in question after it had been towed to the garage in Sheridan on Saturday evening, but no work was done on it that night. On the following Sunday morning, Haenny drove the car around Sheridan and he said "the brakes were grabbing, pulling to the right". In response to the question: "In your experience, experience you have had, what have you found to be the causes of a hydraulic brake such as this one we are talking about in this case either grabbing,—what you call locking or grabbing?" this witness answered, "defective lining".

"Q But what in you opinion would be the thing inside the brake-band or something in connection with the wheel that would cause that locking, taking into consideration all those facts I have just given you?"
"A Well, the lining could be worn or frayed, and break and roll up or something like that, that would cause it to come in direct contact with the drum at that one certain spot more than it was at the others, which would naturally lock the wheel."

It is significant, however, that this witness did not testify that he had examined the brake lining on this car and found it "worn or frayed."

Clifford C. Fairchiles, a son of the plaintiff, testified that he accompanied the mechanic when the car was driven around Sheridan on Sunday morning and that when the brakes were applied "they kind of grabbed". He said the automobile would not come to a "smooth stop", but that it was "a jerky stop, a grab". Fairchiles said he drove the car from Sheridan to Portland and that the brakes "grabbed and nearly throwed me off the highway". Fairchiles said the brakes were in a "bad, dangerous condition".

In refutation of the charge that the brakes were in a dangerous and defective condition, the defendant introduced evidence which may be thus summarized:

The car in question was originally purchased on April 12, 1937, and had been driven about 16,000 miles before it was turned in to defendant on September 10, 1937, as part payment on a new car. After defendant acquired title to the car it was reconditioned and, among other things, the brakes were adjusted. The original owner testified that the brakes "had been very satisfactory". William Barratt, Jr., a salesman, testified that after the car had been traded in he had driven it on two occasions and found no trouble with the brakes.

Medler said the brakes were "apparently perfect". William Anderson, a former employee of the defendant, testified that he drove the car several days before the accident and had no trouble with the brakes. Edward Heitkemper, a mechanic employed by defendant, testified that he repaired the car after the wreck and that upon testing the car he found nothing wrong with the brakes. He said there was no occasion to repair the brakes.

The above statement plainly shows the conflict of the evidence relative to the condition of the brakes. Considering the evidence in the light most favorable to plaintiff, we think a reasonable inference may be drawn that the brakes were defective and that such condition was the proximate cause of the accident. Any person who has had experience in driving automobiles knows that brakes are defective, if, when applied lightly, the car is caused to act as shown by the evidence in the instant case. It may be that the manner in which the hydraulic brakes were applied caused the car to skid on the somewhat slippery highway, but that is a question upon which reasonable minded persons might differ.

It does not follow, however, that at the time the car was delivered to Bogart, the defendant knew or ought to have known that the brakes were defective to such an extent that it would be dangerous to drive the car on the public highways. The evidence on behalf of the defendant strongly tends to show that due care was exercised. No witness, who made any examination of the brakes either before or after the accident, testified that the brakes were defective. No witness testified that the brake lining was "worn or frayed".

Mr. Bogart drove the car approximately fifty miles before he discovered anything wrong with the brakes.

Yet plaintiff asserts that defendant, at the time of delivery of the car to her husband, knew or ought to have known that the brakes were in a dangerous condition. Mr. Bogart apparently appreciated the importance of not disclosing any knowledge about the condition of the brakes prior to the accident. The testimony of Bogart relative to use of the brakes prior to the accident is quite unreasonable. Mr. Bogart testified, in substance, that from the time the car was delivered to him at Portland until the accident occurred, he stopped almost entirely by compression and that he had no occasion to use the brakes. It seems difficult to believe that any person driving a car in the business district of Portland on Saturday afternoon would not have cause frequently to use brakes. To say of Mr. Bogart, in reference to this part of his testimony, that he was handling the truth recklessly is stating the matter mildly.

*Egan Chevrolet Company v. Bruner*, 102 Fed. (2d) 373, 122 A. L. R. 987, comes as near supporting the contention of the plaintiff herein as any case which has come to our attention, but we think it can well be distinguished from the one at bar. In the Bruner case there was evidence by mechanics, who had inspected the truck, that it had defective steering mechanism. This truck had been sold by the Chevrolet Company to one Rutnam the day before it collided with the automobile in which Bruner and others were riding. The defects in the steering mechanism were of such nature that they would be obvious to any mechanic who inspected the same. The automobile dealer had reconditioned the truck before it was sold to Rutnam. It is plain that had due care been exercised in the inspection of the truck the Chevrolet Company would have

known it was in no condition to be driven on the public highways. The factual situation in the instant case is substantially different.

We conclude that there is no substantial evidence tending to show that defendant knew or ought to have known that the brakes were in a dangerous and defective condition.

The judgment of the lower court is affirmed.

RAND, C. J., and BAILEY and LUSK, JJ., concur.