202 P.2d 201

**NICHOLS et al. v. CITY OF PHŒNIX et al.**

No. 4956.

Supreme Court of Arizona.

Jan. 24, 1949.

V. L. Hash, of Phœnix, for appellants.

Jennings, Strouss, Salmon & Trask, of Phœnix, for appellees.

UDALL, Justice.

Separate actions were brought by Nancy W. Nichols (joined by her husband) and Max Latimer against the City of Phœnix and Guy Sheldon, its bus driver employee. The two actions were consolidated and tried before a jury. At the close of all of the evidence the trial court granted a motion for an instructed verdict interposed by these defendants, and judgment was thereupon entered in their favor that the plaintiffs take nothing. Upon denial of their motion for a new trial, the plaintiffs (appellants) have brought the matter before us for review. Both appeals are presented on the same set of briefs. We shall refer to the parties as they were designated in the lower court.

The plaintiffs were paid passengers on an early-morning westbound bus being operated by the City of Phœnix between the city and Luke Field, some 23 miles distant, where plaintiffs were employed as government workers. Both plaintiffs were injured, seriously enough to be hospitalized, when the bus, then traveling over a main thoroughfare known as Maricopa Road, was struck by a Ford coupe driven by one Tom Gilliland at the intersection of Maricopa Road and Lateral 17. While Gilliland was finally made a party defendant, he was not served nor did he make an appearance at the trial. The bus, when nearly through the intersection, was struck over the right rear wheel, the impact causing the bus to skid some 15 feet, then careen out of control some 75 feet before coming to a stop off the paved portion of the highway. Maricopa Road, for many miles both east and west of its intersection with Lateral 17, was designated and marked as a through highway or boulevard, and plaintiffs admit that such was its favored status. The evidence introduced by plaintiffs, as well as that offered by the defendants, showed that Gilliland failed to stop or even slack his speed before entering the boulevard, that he entered the intersection while driving at a speed estimated by various witnesses to be from 50 to 65 miles per hour, and crashed into the right rear side of the city bus. The evidence stands uncontradicted that Gilliland told the highway patrolman who investigated the accident that the road was new to him, that he did not know there was a stop sign there, and that he was in a hurry to get to work and

"ran" through the stop sign. He also told the bus driver that his brakes did not work when he started to apply them. The evidence is uncontradicted that the stop sign at this intersection was plainly visible, the view thereof being unobstructed.

The plaintiffs charged the defendants with both general and specific acts of negligence, particularly the operation of the bus at an excessive rate of speed, and failure to keep a proper lookout for approaching cars at this intersection.

In ruling upon the defendant's motion for a directed verdict at the close of all the evidence in the case, the learned trial court took the view that even assuming a conflict in the evidence as to defendant's negligence, still the primary proximate cause of the accident was the wrongful act of Gilliland in "running" the stop sign, and that the court could declare as a matter of law that this act was the sole proximate cause of the collision and of the resulting injury to plaintiffs. The basic assignment of error urged on this appeal is that the trial court erred in directing a verdict for defendants at the close of the whole case for the reason that plaintiffs' proof established acts of negligence on the part of the defendants and that such negligence, as well as the matter of proximate cause, became a question of fact for the determination of the jury. A motion of this kind is regarded as admitting the truth of whatever competent evidence the opposing party had introduced including the

reasonable inferences to be drawn therefrom, and it is only where the evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to set it aside, that the court is justified in directing a verdict. Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 44 A.L.R. 881; Dieterle v. Yellow Cab. Co., 34 Cal.App.2d 97, 93 P.2d 171.

Ordinarily an appellate court in determining an appeal views the evidence, where it is conflicting, in the light most favorable to a sustaining of the lower court's judgment. City of Bisbee v. Cochise County, 50 Ariz. 360, 72 P.2d 439. A reverse rule however applies where, as here the trial court directs the jury to return a verdict for the defendants. The conflicting evidence then must be viewed in a light most favorable to plaintiff. Cope v. Southern Pac. Co., 66 Ariz. 197, 185 P.2d 772; Dieterle v. Yellow Cab. Co., supra. In our recitation of the facts we shall state them in this light.

The plaintiffs have, apparently for good measure, injected in their briefs the matter of a breach of contractual relationship, but an examination of the complaints convinces us that the gravamen of these actions clearly rests in tort. We quote from 1 C.J.S., Actions, § 49e(5):

"* * * but if it appears from the complaint that the gist of the action is a

breach of public duty, the action is construed as in tort, and its character as such is not affected or changed by the fact that the complaint alleges a contract of transportation, the purchase of a ticket or the payment of fare, the action certainly being ex delicto if no contract is specifically pleaded." In determining the appeal we shall therefore treat the cases as tort actions and ignore the arguments advanced by plaintiffs as to the contractual liability of the city.

■ The plaintiffs are entitled to rely upon the well settled law that the City of Phœnix, acting in its proprietary capacity as a common carrier of passengers for hire, is bound to exercise the highest degree of care practicable under the circumstances. Southern Pac. Co. v. Hogan, 13 Ariz. 34, 108 P. 240, 29 L.R.A.,N.S., 813; Atchison, Topeka, & S. F. Ry. Co. v. France, 54 Ariz. 140, 94 P.2d 434; 10 Am. Jur., Carriers, section 1245; Lewis v. Pacific Greyhound Lines, 147 Or. 588, 34 P.2d 616, 96 A.L.R. 718, with annotation beginning at page 727. However the carrier is not an insurer of the safety of passengers. Alexander v. Pacific Greyhound Lines, 65 Ariz. 187, 177 P.2d 229; 37 Am. Jur., Motor Transportation, section 594.

■ The plaintiffs charge the defendants with a violation of two separate statutory speed regulations, the first being section 66-101(c), A.C.A.1939, which reads in part:

" * * * Provided, however, that no person operating a vehicle for the transportation of passengers for compensation shall operate such vehicle at a speed in excess of forty-five (45) miles per hour." Then, by trial amendment, plaintiffs changed from a charge of an alleged violation of the fifteen miles per hour statute set forth under subsection (a) of section 66-101, supra, to the charge of a violation of the following provision set forth in subdivision (b) of this section:

"(b) Twenty (20) miles per hour: * * * 2. upon approaching within fifty (50) feet and in traversing an intersection of highways where the driver's view in either direction along any intersecting highway within a distance of two hundred (200) feet is obstructed, *except that when traveling upon a through street or at traffic controlled intersections the district speed shall apply.*" (Emphasis supplied.)

This latter special provision is a limitation upon the general speed laws covered by section 66-101, supra, (whether it be the reasonable and prudent speed at which automobiles generally may be driven, or the forty-five mile speed limit fixed for common carriers). In our opinion the twenty mile provision has no application in the instant situation for the reason that defendants were operating upon a through or arterial highway, and plaintiffs, upon whom rested the burden, have failed to show that any special district speed was

then in effect on Maricopa Road. In the absence of a special district speed, the general law as to speed applies.

The accident in question occurred at approximately 6:25 A. M. on February 1, 1945. It was just breaking day and both the Ford car driven by Gilliland and the city bus driven by defendant Sheldon were using lights which made their movements more clearly visible. Plaintiffs placed reliance, in part, upon testimony presented showing that it was plainly visible to the occupants of the bus, including its driver, that the Ford car going south on Lateral 17 was for more than a half mile back of the point of intersection with Maricopa Road traveling at a high rate of speed. They contend that this was a warning to the bus driver that the Ford car might not stop at the intersection and that hence his failure to so control and slow his bus down in time to avoid a possible collision constituted negligence and breach of the duty demanded of common carriers by the law to exercise the highest degree of care in protecting their passengers. There is no merit to this specious argument. The speed of the approaching car at a considerable distance from the intersection is, of itself and standing alone, without significance. Young v. Campbell, 20 Ariz. 71, 177 P. 19

Maricopa Road, upon which the bus was traveling, was an "arterial highway". The patent purpose of creating these through highways is to facilitate traffic upon them, and to that end the state may, by the erection of appropriate stop signs at points of intersection therewith, delay all traffic entering into such favored highways in order that those traveling upon them may have a preferred right of way. The defendants, Sheldon and the city through him, were operating wholly within their rights in assuming at this stage of the journey that the driver of the Ford car (Gilliland) would stop before entering the highway, and they cannot be charged with negligence in acting upon such assumption. The purpose of facilitating traffic on favored highways would be completely frustrated if travelers upon them were required to slow down at every intersecting highway, and the vast sums which have been spent in their construction, in an effort to accommodate the great volume of automobile traffic which is so indispensably a part of modern life, would be largely wasted.

We believe that the true rule governing the duties and liability of common carriers of passengers arising out of collisions at intersections is best stated in 4 Blashfield's Cyclopedia of Automobile Law and Practice, Perm.Ed., § 2161.5:

"Even though a bus driver is on a through or 'stop' street, or on a main thoroughfare, or may have the right of way, he is not necessarily free from negligence in colliding with a vehicle entering from an intersecting street.

132

"More specifically, the fact that the bus driver may have the right of way does not relieve him from his negligence in failing to keep a proper lookout or in failing to yield the right of way to a motorist *when the bus driver discovers that the motorist is not going to yield the right of way.*

"It is nevertheless the rule of all the authorities that a bus driver may assume that another motorist will proceed in accordance with the law, and the driver of a bus on a through or favored highway may therefore assume that a motorist approaching from the side will obey the law and stop before entering the favored highway; and the bus driver is not to be charged with negligence by reason of such an assumption, *unless he continues on after he has knowledge that the other is not acting within the law.*

"In an action arising out of an intersectional collision, as in collision cases generally, 'each case of this character must be resolved after a consideration of its own peculiar facts.'" (Emphasis supplied.) For cases supporting the rule see Gritsch v. Pickwick Stages System, 131 Cal.App. 774, 22 P.2d 554; Id., 27 Cal.App.2d 494, 81 P. 2d 257; Arkansas Power & Light Co. v. Boyd, 188 Ark. 254, 65 S.W.2d 919; Levner v. Northland-Greyhound Lines, 231 Wis. 554, 286 N.W. 68.

In determining whether, on the record before us, a jury question is presented on either negligence or proximate cause or both we can limit the inquiry to the happenings in the immediate locale of the intersection. The plaintiffs rely upon these acts as constituting negligence: (1) the excessive and unlawful speed at which the bus was being driven; (2) failure to keep a proper lookout for approaching cars at the intersection; and (3) negligence on the part of the bus driver in his failure to act in a reasonably prudent manner after his discovery that the driver of the Ford car was not going to yield the right of way.

Several of the other passengers testified that in going into the intersection in question the bus was exceeding the statutory speed limit of forty-five miles per hour and that there was no attempt to slow down or otherwise bring the bus under control. There is also testimony in the record, to which we have already adverted, from which a jury could have found that the excessive, unslackened speed of the Ford car continuing down to the intersection constituted warning that it was not going to stop. The witnesses agreed that three rows of orange trees and a house situated on the tract lying at the northeast corner of the intersection somewhat obscured the vision of the occupants of the bus as to south bound traffic on Lateral 17. Possibly the most graphic description of the accident, summing up his appraisal of the situation, was given by defendant Sheldon, the bus driver, who testified:

"Well, I could see the lights of this car coming down Lateral 17. I could see it back say three hundred yards from the intersection—I could see the lights. And, of course, I didn't start to slow up until I got up to about fifty feet from the intersection. And there is a space in there, the house and trees where it blacks you out for about twenty-five or thirty feet, but after you passed that space you could see the car coming. In fact, I could see the car's lights all the way through. Well, I sort of hesitated when I got to the intersection, and I saw him. He was back there I would say about a block away, so I just thinks to myself, 'He is that far back. I've got time to cross.' So I went ahead like anybody would go across; thinking I was safe. Well, I thought I had gotten—I had almost made the intersection and something hit me like that and for a minute I didn't know what happened. I thought I had hit a big rock or something in the road. It knocked me out of my seat temporarily. * * *"

Fred Gittner, the highway patrolman who investigated the accident, was called as a witness by the defendants, and he testified that while the trees and house somewhat obstructed the view, still at a distance of fifty feet back of the intersection a person could see a car approaching from the north on Lateral 17 a distance of from 250 to 300 feet. He further testified that the bus driver told him immediately after the happening of the accident that he never saw the approaching car coming into Lateral 17 until the impact. Sheldon, from the stand, both denied and attempted to explain this statement.

The case of Cooper v. Safeway Lines, 304 Ill.App. 302, 26 N.E.2d 632, 638, concerns a collision involving a passenger bus, and in the case the court said:

" * * * As common carriers defendants knew that they were bound to do all that human care, vigilance and foresight could reasonably do, consistent with the mode of conveyance they employed, to protect their passengers. The driver in charge of defendant's bus could not negligently calculate on his ability to avoid danger to its passengers, nor so calculate and speculate as to the safety of the passengers in any respect. Rowan v. Bartonville Bus Line, 242 Ill.App. 451. * * *"

In the case of Glatz v. Kroeger Bros. Co., 168 Wis. 635, 170 N.W. 934, 936, which does not involve a common carrier of passengers, to which class it must be remembered the law imputes an even higher duty and degree of care, it was said concerning the possessor of the right of way at an intersection:

"The possession of this right does not, of course, justify the possessor in plunging ahead regardless of consequences nor in failure to exercise ordinary care to avoid injury to others, but the fact is an important one to be considered in deciding the question of negligence. * * *"

We believe, on this state of the record and upon the application thereto of the rules of law hereinbefore quoted, that there was presented a question for the determination of the jury as to the negligence of defendants. The evidence was such that reasonable minds might differ thereon.

 Liability for one's negligent acts cannot be predicated upon negligence alone. The law requires that the proof progress yet another step for "proximate cause" must also be shown. Though it hardly seems necessary to reinforce the stating of this legal proposition with authorities, our own court has expressed the rule to be:

"* * * Negligence is not actionable unless it is the proximate cause of the injury. 45 C.J. 901, sec. 478." Wylie v. Moore, 52 Ariz. 537, 84 P.2d 450, 451. And in Salt River Valley Water Users' Ass'n v. Cornum, 49 Ariz. 1, 63 P.2d 639, 646, we said in considering with approval the case of The Lusitania, D.C., 251 F. 715, 732:

"'It is an elementary principle of law that, even if a person is negligent, recovery cannot be had, unless the negligence is the proximate cause of the loss or damage.'"

Is there, then, evidence in the record as heretofore recited which would justify a jury in finding that the alleged negligence of the defendant bus driver was a proximate cause of the injuries sustained by the plaintiffs? If this question is answered in the affirmative, then we must hold the trial court erred in directing a verdict for defendants at the close of all the testimony in the case. As hereinbefore stated the trial court took the position that "* * * but for the running of this stop sign no honest men or women could differ about what caused this accident * * *", and as a matter of law any negligence which, under the evidence presented, might be chargeable to the driver of the bus could not have been a proximate cause of the collision and the injuries resulting to the plaintiffs therefrom.

 This court has on many occasions dealt with the problem of proximate cause (more properly styled "legal cause", see Prosser on Torts, section 45), and has defined it in the case of Salt River Valley Water Users' Ass'n v. Cornum, supra:

"'The "proximate cause" of an event is that which, in a natural and continuous sequence unbroken by any new, independent cause, produces the event, and without which the event would not have occurred, which connection is broken when a new or subsequent cause intervenes so as to become the sole factor producing the injurious result to the exclusion of the negligence of the first wrongdoer in its operation as an efficient factor therein, but it is not broken by the addition of another factor or cause which merely contributes to the result without superseding the efficient operation of the first cause.'" We have also said, "* * * That cause is proximate without which the accident would not have happened. * * *" Inspira-

tion Consol. Copper Co. v. Conwell, 21 Ariz. 430, 190 P. 88, 90. In the latter case we went on to say:

" * * * Proximate cause is a question of fact, and a question for the jury if there is substantial evidence from which it may reasonably be deduced that the negligence shown was the proximate cause of the injury complained of. * * * " And we have said further:

"Of course, it was incumbent upon the appellees, not only to prove negligence on the part of the appellant, but also to show that such negligence was the proximate cause of the damages. What is the proximate cause, that is, the immediate and operating cause of an injury, is often a vexatious question. It is, however, usually a question of fact. Mr. Justice Strong, in Milwaukee etc. Ry. Co. v. Kellogg, 94 U. S. 469, 24 L.Ed. 256 (see also, Rose's U.S. Notes), stated the rule to be followed in the solution of the question as follows:

" 'The true rule is that what is the proximate cause of an injury is ordinarily a question for the jury. It is not a question of science or of legal knowledge. It is to be determined as a fact, in view of the circumstances of fact attending it.' " Mesa City v. Lesueur, 21 Ariz. 532, 190 P. 573, 576; Morrison v. Acton, 68 Ariz. 27, 198 P.2d 590; 38 Am.Jur., Negligence, sections 351, 352.

In a recent case from the state of Washington, Scobba v. City of Seattle, Wash. 198 P.2d 805, 810, some of the difficulties attendant upon determinations of proximate cause are recognized, the court quoting from 38 Am.Jur., Negligence, section 53:

" 'Definitions of "proximate cause" are easily given in general terms, but they are very difficult in practical application to the facts of particular cases. As has been said: "What is the proximate cause of an injury in a legal sense is often an embarrassing question, involved in metaphysical distinctions and subtleties difficult of satisfactory application in the varied and practical affairs of life." No exact rule for determining when causes are proximate and when remote has yet been formulated. Indeed, it is impossible by any general rule to draw a line between those causes of injuries which the law regards as sufficiently proximate, and those which are too remote to be the foundation of an action. In the language of the United States Supreme Court, each case must be "decided largely on the special facts belonging to it, and often on the very nicest discriminations." The line between proximate and remote consequences is exceedingly shadowy; so much so that the one fades away into the other rendering it often very difficult to determine whether there is such a connection between the wrong alleged and the resulting injury as to place them, in contemplation of law, in the relation of cause and effect. Making such determination is something like drawing "a line between night

and day." * * * Proximate cause shall be determined upon mixed considerations of logic, common sense, policy and precedent.' "

The court in this last case went on to say after a consideration of the facts involved:

"We do not hold that the speed of the train could not have been a proximate cause of the accident. However, that was a question upon which the minds of reasonable men could differ, and it was therefore submitted to the jury under proper instructions. * * *"

The eminent author of Prosser on Torts has this to say, at page 374, section 50, of his work, as to the functions of court and jury in cases of this character, in connection with causation:

"In any case where there might be reasonable difference of opinion as to the foreseeability of a particular risk, the reasonableness of the defendant's conduct with respect to it, or the normal character of an intervening force, the question is for the jury, subject of course to suitable instructions from the court as to the legal conclusion to be drawn as the issue is determined either way. By far the greater number of the cases which have arisen have been of this description; and to this extent it may properly be said that 'proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in the consideration of the evidence of each particular case.' "

See also Restatement of Torts, section 453, comment (a).

The facts of this case are such as call for the application of the well settled rule of law to the effect that defendant's negligent act need not be the sole cause of the injury, it is enough that it be a legal cause. McEvoy v. American Pool Corp., Cal.Sup., 195 P.2d 783. If an injury is caused by the concurrent effect of two separate wrongful acts, each is a proximate cause of the injury, and neither can operate as an efficient intervening cause with regard to the other, nor can either party escape liability so long as his own negligent act is one of the proximate causes of the injury. Fagan v. Union Pac. R. Co., Cal.App., 193 P.2d 776; 38 Am.Jur., Negligence, section 64; Restatement of Torts, section 439.

Appellees seek to escape liability upon the theory that the act of defendant Gilliland in failing to obey the mandate of the stop sign was an independent force which, acting upon the situation created by the claimed negligence of defendant bus driver, became such an intervening cause that the original negligence is no longer a proximate cause of the injury. The wording of the trial court's ruling in directing a verdict in favor of defendant city and its driver indicates to us that this was the view that it took of the matter. It is urged by appellees that the act of Gilliland being an intervening crimi-

nal act (a misdemeanor under our statute, section 66-114, A.C.A.1939), of necessity the rule enunciated in the case of Crandall v. Consolidated Tel. etc., Co., 14 Ariz. 322, 127 P. 994, 997, must be invoked:

" * * * The criminal act of a third party can never be the natural sequence in the link of circumstances leading up to an injury, but, when such act is present, it must be considered as the efficient proximate cause of the subsequent injury, and the law will not go beyond it for a proximate cause. * * *"

In support of this statement of legal principle appellee cites with approval and quotes from the case of Salt River Valley Water Users' Ass'n v. Cornum, supra. If this court were to apply such rule unqualifiedly to the facts of the case at hand, we would perhaps be obliged to affirm the ruling of the trial court. Both of the cases just cited which set out this rule are distinguishable, however, upon the facts, for in neither of them was there presented, as there is here, a situation of presently operating concurrent negligence. The negligence of the defendants which, in both of those cases, concerned inanimate objects, had been in operation for some period of time prior to the happening of the events which directly resulted in the plaintiff's injuries. There existed in those cases a static negligent condition, not "concurrent" with the active and immediately operative illegal intervening acts of a third party. In the Salt River Valley Water Users' Ass'n

case this court itself recognized certain qualifications of the rule relied upon by appellees, when it said:

"And we think to require a person to anticipate even one, let alone two violations of law, *which are not concurrent with his own negligence* is to hold him to the standard of the 'barely possible.' * * *" (Emphasis supplied.) In this same case the court further qualified, in effect, the language used in the Crandall case by saying:

" * * * It is the well-established rule of law that a defendant's negligence is too remote to constitute proximate cause of an injury when an independent illegal act of a third person, *which could not be reasonably foreseen* and without which such injury would not have been sustained, intervenes. * * *" (Emphasis supplied.)

We have no hesitancy in rejecting the contention of appellees, that Gilliland's illegal act relieved defendant city and its driver-employee from any liability. We believe the correct answer to this argument is the following quotation from 38 Am. Jur., Negligence, section 71:

"The rule that the negligence of a defendant does not render him liable for the consequences of an intervening criminal act which was not foreseen by him does not exempt him from liability *where his negligence continued to, and concurred with,* the criminal act in causing an injury. * * *" (Emphasis supplied.) See Restatement of Torts, section 439.

This same authority and 45 C. J., Negligence, section 495 recognize the further qualification of the general rule. We quote from the latter:

"* * * But where an independent illegal act was of a nature which might have been anticipated, and which it was the defendant's duty to provide against, he will be liable for a breach of such duty notwithstanding the production of injuries by the intervention of an act of the character described." Section 449, Restatement of Torts is also worthy of quotation:

"If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby." See also section 447.

It is our belief that the statement from the Crandall case, supra, relied upon by appellees, cannot be taken out of its context and presented here as a governing rule of law. Standing alone, it is too broad and sweeping in its language, as these authorities clearly show.

■■ In the light of the above rules and the unusual facts presented by the record in this case, it is impossible to say, as a matter of law, that defendants are relieved from liability for Sheldon's negligence, if any, by the intervening illegal conduct of Gilliland. As this court has said:

"* * * All that is required in negligence cases is for the plaintiff to present probative facts from which negligence and the causal relation may be reasonably inferred:

"'* * * It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. (Citing cases.) That conclusion whether it relates to negligence, causation or any other factual matter, cannot be ignored. * * *'" Apache Railway Co. v. Shumway, 62 Ariz. 359, 158 P.2d 142, 150, 159 A.L.R. 857.

■ The jury in this case could have found that defendant city owed a duty to persons in plaintiffs' situation; that this duty was violated, after warning to the bus driver of Gilliland's impending wrongful act, by the driver's failure to act thereafter as a reasonably prudent man would have acted under the circumstances then presented; and that such negligent conduct was a contributing factor to the collision which resulted in the injuries to the plaintiffs. Nor can responsibility be escaped merely because of an intervening act, the likelihood of which under the circumstances of the case the jury could have found should reasonably have been fore-

seen. It must be remembered that appellees, acting as a common carrier, owed to passengers the duty of exercising the highest degree of care compatible with the practical operation of the bus, and that such duty is not met as a matter of law by a mere observance of the law of the road. Appellee's negligence, if any, is to be measured by its duty as a common carrier, not by its duty to other users of the highway. Singer v. Martin, 96 Wash. 231, 164 P. 1105.

In a quite similar case the California District Court of Appeals said:

"The trial court in passing upon the motion for a directed verdict could not, and this court in reviewing the order of the trial court cannot, weigh the evidence for the purpose of determining wherein rests the preponderance of the evidence. That question ordinarily is one for the jury and may not be taken from the jury unless no substantial evidence be presented which, viewed in the light most favorable to plaintiffs, would support a verdict in their favor. Plaintiffs were not bound by the testimony of La Force in toto nor were they bound by the testimony of Nave in toto. They had the right to depend upon the most favorable portions of the testimony of these and other witnesses together with all fair and reasonable inferences which could be deduced therefrom. The court erred in directing the verdict." Dieterle v. Yellow Cab. Co., supra [34 Cal.App.2d 97, 93 P.2d 173].

We conclude that the learned trial court erred in directing a verdict for the defendants at the close of all the evidence in the case. However, we are not to be understood as having decided that common carriers of passengers can no longer place any reliance upon the protection commonly recognized as being afforded by the erection of stop signs at points of intersection of secondary roads with through highways. We do hold that, under the facts peculiar to this case, sufficient evidence was introduced to call for a submission to the jury, as factual matters upon which the minds of reasonable men might differ, the questions of negligence and proximate cause.

Reversed and remanded for new trial.

LaPRADE, C. J., and STANFORD, PHELPS, and DECONCINI, JJ., concur.