236 P.2d 458

**BASSETT et ux. v. RYAN et al.**

No. 5346.

Supreme Court of Arizona.

Oct. 8, 1951.

Cullen A. Little, Globe, and Rawlins, Davis, Christy, Kleinman & Burrus, Phoenix, for appellants.

Shimmel, Hill & Hill, Phoenix, for appellees.

UDALL, Chief Justice.

This is an appeal by plaintiffs, Joe R. Bassett and Mable Bassett, his wife, from a judgment entered against them based upon a directed verdict for the defendants, and from the order denying their motion for a new trial.

The facts material to this appeal are as follows: Plaintiff Joe Bassett was an experienced cattleman, with many years experience at the time of this sale, and holding like grazing permits and preferences in his own name. The defendants (appellees) were a partnership consisting of E. E. Ryan, J. B. Ryan, and C. M. Ryan, d. b. a. Ryan Cattle Company. In addition to their

livestock, defendants owned 80 acres of patented land and extensive improvements located on range lands in Gila County, Arizona, and were the holders of certain established terms preferences and annual permits to graze cattle on the Crook National Forest.

In the late summer of 1947 the defendants orally agreed to sell their entire holdings, as one of them expressed it "lock, stock and barrel", to the plaintiffs for $180,-000. On September 5, 1947, the sale was completed and a written agreement was drawn warranting the number of cattle grazing on the range included in the sale, specifying the method of counting the cattle, and making provision for crediting the plaintiffs for any shortage in the warranted number. There was however no warranty contained therein as to the grazing preference that the Forest Service might ultimately allow to plaintiffs. The defendants simultaneously executed and delivered to the plaintiffs a bill of sale for the cattle, a deed covering the patented land, and a waiver to the United States Forest Service of all their grazing preferences and permits. On January 3, 1948, the plaintiffs made application to the Forest Supervisor for a grazing preference covering 786 head of livestock which was the maximum or ceiling number theretofore held by the defendants. However for the year 1947 the defendants had only a year long permit for 540 head of cattle, a five month permit for 157 head, and a compulsory non-use permit for 223 head.

On February 24, 1948, the Forest Service notified the defendants that they had grazed more livestock than they had paid grazing fees on and more than their permits allowed for the years 1946 and 1947, and assessed a fine of $1,153.16 against them for the trespass. They also gave the defendants an opportunity to show cause why their grazing preference should not be reduced by 189 head. The defendants paid the fine, but contested the reduction because it would be unfair to the plaintiffs who were entirely innocent in the matter. Principally because of the trespass the Forest Service issued to the plaintiffs a term preference for only 621 head, which was a net reduction of 165 head.

■ It might be well to point out the distinction between a grazing preference and a grazing permit. This is well stated in N.F.–C4–3, Chapter C, Volume III, National Forest Protection and Management, Forest Service Manual, as follows: "A preference conveys no legal right to the use of national-forest range. It simply entitles the holder to special consideration over other applicants who have not established preferences. A preference does not entitle the holder to continue use of any certain part of the forest. The terms 'preference' and 'permit' are not synonymous. A permit authorizes the grazing of livestock under specific conditions and ex-

pires on a certain date, while preference continues until canceled or revoked:"

These permits and/or preferences cannot be transferred or assigned directly to the purchaser but can only be waived to the Forest Service, and within its sole discretion may be reissued. In Bell v. Apache Maid Cattle Co., 9 Cir., 94 F.2d 847, 849, the law applicable is stated:

"There is no law which gives an individual or corporation the right to graze stock upon the National Forest lands except under the regulations promulgated by the Department of Agriculture. * * *

"Appellant knew or was required to know that under the regulations appellees could not convey grazing rights to him. All they could do was to relinquish. Appellant, after entering into the contract, should then have made his application to the Forest Service which alone had authority to make any allotment."

The gravamen of plaintiffs' complaint was breach of contract and damages in the sum of $16,500 were sought, the theory being that a grazing preference was then worth $100 per head to the cattleman. The trial court granted the defendants' motion for a directed verdict at the close of plaintiffs' case.

▇ There were four assignments of error, the last being: "The lower court erred in refusing plaintiffs leave to amend their complaint by inserting the words 'permit and/or preference' after the words 'grazing rights' throughout the complaint."

Rule X, subd. 1 of this court requires that: "All assignments of error must distinctly specify each ground of error relied upon and the particular ruling complained of * * * or it will be deemed to be waived."

Plaintiffs' above assignment of error fails to comply with this requirement in that it states no grounds why the trial court's ruling was in error. It is therefore unnecessary for us to discuss this assignment further as it must be deemed to have been waived. Tidwell v. Riggs, 70 Ariz. 417, 222 P.2d 795; Thornburg v. Frye, 44 Ariz. 282, 36 P.2d 548. In any event the plaintiffs were in nowise prejudiced by this adverse ruling.

Plaintiffs' other assignments of error have to do with the trial court's direction of verdict in favor of the defendants. The grounds specified in support of these assignments are not altogether clear.

▇ The trial court in granting defendants' motion for a directed verdict stated that the plaintiffs had failed to prove their case and that if the jury rendered a verdict for the plaintiffs it would be compelled to set it aside. The general rule governing directed verdicts was recently laid down by this court in Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201, 204, as follows:

"A motion of this kind is regarded as admitting the truth of whatever competent evidence the opposing party had introduced

including the reasonable inferences to be drawn therefrom, and it is only where the evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to set it aside, that the court is justified in directing a verdict. (Citing cases.)

" * * * where, as here the trial court directs the jury to return a verdict for the defendants. The conflicting evidence then must be viewed in a light most favorable to plaintiff." (Citing cases.)

■ Plaintiffs allege in their complaint that the defendants represented and warranted to the plaintiff that the grazing rights and forest permits were in good standing and would be transferred to them. We have carefully reviewed the record including the transcript of evidence and nowhere do we find competent evidence to support this allegation. There is no evidence from which any specific representation, warranty or agreement concerning the preference can be drawn, except that the defendants held a preference for 786 head and would waive it to the Forest Service. In fact plaintiffs practically conceded this was true by moving to strike these allegations from the complaint at the close of all the evidence. For some inexplicable reason this part of their motion was denied.

The only evidence introduced at the trial concerning the preference and permits, other than as to the number of head defendants were allowed, was at a meeting between the plaintiff and one of the defendants, J. B. Ryan. Plaintiff testified as to what was said concerning the permit or preference, " * * * I asked him about the permit, did he think the Forest Service might take a ten per cent transfer cut, and he said he didn't know, they might. It was more or less up to the Forest Service."

The plaintiffs knew it was up to the Forest Service in its discretion to reissue the preference to him, and that the defendants could only waive the preference to the Forest Service.

■ Plaintiffs also contend that the trial court in directing a verdict for the defendants was in effect holding that a contract involving the sale or transfer of grazing rights is illegal and that such rights have no definite values in the cattle business. These contentions are unwarranted for the experienced trial court recognized, and we hold that while the rights obtained by a permittee to graze stock upon the National Forest do not fall within the conventional category of vested rights in property, yet while they exist they are something of real value to their possessors. They had their origin in an enactment of Congress. Cf., Red Canyon Sheep Co. v. Ickes, 69 App.D.C. 27, 98 F.2d 308, and our recent case of Stevens v. Stevens, 70 Ariz. 302, 219 P.2d 1045. Furthermore we hold that these are valuable permits or preferences and legitimate objects of con-

388

tract, even though they cannot be directly conveyed to the purchaser but can only be relinquished to the government.

It would be unreasonable for us upon this record to say that the trial court abused its discretion in granting the defendants' motion for a directed verdict. We agree with the learned trial judge that the plaintiffs failed to prove their case, and a verdict if rendered for the plaintiffs would have to be set aside.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.