272 P.2d 613

**PICOW v. BALDWIN.**

**No. 5743.**

Supreme Court of Arizona.

June 30, 1954.

V. L. Hash and Virginia Hash, Phoenix, for appellant.

. Moore & Romley, by Anthony T. Deddens, Phoenix, for appellee.

**UDALL, Justice.**

This is an appeal by plaintiff-appellant Charles Picow from a judgment entered after an instructed verdict in favor of defendant-appellee, Clarence E. "Teak" Baldwin, and from a denial of plaintiff's motion for a new trial. We shall refer to these parties as plaintiff and defendant.

Plaintiff's complaint stated a claim for relief for an assault alleged to have been committed upon him by defendants Baldwin, John Doe, and Richard Roe. The fictitious defendants were subsequently identified as Jack B. Bradshaw and Bud E. Linderman, but were never served with summons nor did they make any appearance in the case. However, their depositions were taken and admitted in evidence as a part of defendant's case, though for some undisclosed reason the depositions are not part of the record before us.

Plaintiff's theory of his case is well stated in paragraph III of his complaint, which reads:

"That on or about the 11th day of April, 1950, at the hour of 11:45 P.M. of said day plaintiff entered into the bar and cafe of the defendant Teak Baldwin, and at the said time and place and without any lawful excuse, the defendants John Doe and Richard Roe and the said Teak Baldwin, violently assaulted plaintiff; that the defendant Teak Baldwin cursed plaintiff and threatened plaintiff, and shoved plaintiff, and hit plaintiff in the face and threw him out of the door. That thereupon the defendants John Doe and Richard Roe, acting as the agents of the defendant Teak Baldwin, and under the direction and command of the de-

fendant Teak Baldwin, assaulted plaintiff, striking him about the head and face, and knocking him to the ground, kicking him in the stomach and about the body, and inflicted on plaintiff serious and painful injuries which caused plaintiff to become unconscious. That plaintiff begged the said defendants to desist from their attack upon plaintiff, and plaintiff finally escaped from the defendants."

When the court sustained objections by defendant to certain statements of the plaintiff, counsel for the latter made the following statement:

"Mr. Hash: When a man begins an assault, as we will show Baldwin did on the man, and evicts him from the premises, it makes no difference who joins in it, it is his assault, and he is bound by it because he owes a duty to protect his patrons."

The trial court pointed out this would change the whole theory of the case, and counsel then indicated an amendment would be made. The following conditions were imposed:

"The Court: If you desire to make that amendment and change the whole theory of the case, I will permit it on the condition that this jury be dismissed and the costs of the witnesses, the defendant's witnesses, be taxed against the plaintiff."

No amendment was offered, and the case proceeded to trial with plaintiff standing upon the original complaint.

Basically, plaintiff contends he had made a prima facie case of liability on the part of defendant and that it was therefore error to grant the motion for directed verdict. In determining whether plaintiff had made out a case for the jury, we must view the facts most favorably to him. Mackey v. Blakely Oil Inc., 77 Ariz. 169, 268 P.2d 674; Jeune v. Del E. Webb Constr. Co., 76 Ariz. 418, 265 P.2d 1076; McClinton v. Rice, 76 Ariz. 358, 265 P.2d 425; Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201.

The evidence shows plaintiff is an artist and in April, 1950, earned his livelihood by drawing the likeness of restaurant patrons and selling them to the subject. He carried on this work at several places, including the "Steak House" and "Gilded Cage" night clubs located on North Central Avenue in Phoenix, which were at that time owned by defendant. A few days prior to April 11, 1950, plaintiff had been requested by defendant to take a vacation or go to Palm Springs, California, to work because he had sketched all the regular customers at the night clubs. However, plaintiff did not do so, and entered the "Gilded Cage" between 10:30 and 11:30 p. m. on the night in question for the avowed purpose of wishing defendant a happy birthday. According to plaintiff, defendant received his greeting

with several curses, arose from his seat at a booth, grabbed plaintiff by the arm, and escorted him out of the night club via the front entrance. On the way to the door, they passed a number of people who were standing in the entryway waiting to be seated, two of whom testified but neither of whom saw any disturbance.

Plaintiff testified that just inside the front entrance he was struck two blows, one hitting him on the left side of the jaw, the other in the eye, and when asked who hit him, his reply on direct examination was:

"Baldwin, I guess."

As to the second blow he testified it was "probably the same fellow who struck the first" but that he could not say that he saw the person who did it. The following occurred on cross-examination:

"Q. Did you see the person who struck the (first) blow? A. No, not at the time I was hit.

\*    \*    \*    \*    \*    \*

"Q. You didn't see Mr. Baldwin strike any blows directed toward you at all that night, did you? A. No.

\*    \*    \*    \*    \*    \*

"Q. How close was he (Baldwin) to you? A. Oh, he was an arm's length, I guess.

\*    \*    \*    \*    \*    \*

"Q. Do you know who struck either of those blows? A. I imagine it was Baldwin because he was the only one I saw.

"Q. All you can tell us is you imagine it was Baldwin because he was the only one you saw there? A. I don't know who else would hit a fellow with his head turned, with glasses on.

\*    \*    \*    \*    \*    \*

"Mr. Romley: Now, you recall in your deposition you were asked these questions and you made these answers, page 14, line 14, 'Q. Where were you hit, whereabouts in the place there, before you got out the door?' and your answer, 'At the doorway. They must have hit me in the glasses first, I don't know. No it was in the jaw, the first blow. Q. Who hit you? A. That I don't know.' Were you not asked those questions and did you give those answers? A. Yes, that is right."

The only testimony relative to defendant's striking plaintiff comes from the latter's own lips. We are of the opinion this testimony falls far short of permitting the inference that it was defendant who struck the first two blows suffered by plaintiff.

Outside the door, plaintiff was assaulted by Bradshaw, Linderman and one other unidentified person who administered a terrific beating, pummelling him and kicking him viciously on the head and about the body. Plaintiff escaped by running for a bus which was proceeding down Central Avenue in front of the "Gilded Cage". Plaintiff's injuries were very severe, his jaw was broken, he lost nearly all the vision

in his left eye, he was bruised about his body, his glasses were smashed and his clothes were ripped apart. The record shows that Bradshaw and Linderman were rodeo performers by profession, and shortly prior to plaintiff's eviction they had been requested by defendant to leave the "Gilded Cage" because of their offensive and boisterous conduct. There was not a scintilla of evidence tending to support the theory the three assailants were the agents of defendant or acting under his command.

In Arizona the law is well settled that the court should grant a motion for directed verdict "where the evidence is insufficient to support a verdict, or where it is so weak that upon a motion for a new trial after verdict the court would feel constrained to set it aside * * *." Arizona Binghampton Copper Co. v. Dickson, 22 Ariz. 163, 195 P. 538, 540, 44 A.L.R. 881; Nichols v. City of Phoenix, supra; Bassett v. Ryan, 72 Ariz. 383, 236 P.2d 458. We do not have before us the complete record in this case because the depositions of Bradshaw and Linderman which were read into the record are lacking. Under our rules, we must assume that the contents thereof tend to support the action taken by the trial court. See, In re Perrin's Estate (Perrin v. Hazeltine), 53 Ariz. 127, 86 P.2d 25, and cases therein cited. We have carefully examined and considered the record on appeal, and we hold the learned trial court was correct in granting defendant's motion for an instructed verdict, for the evidence upon which plaintiff relies, consisting as it does in guesswork and imagination, is insufficient to support a verdict.

Judgment affirmed.

PHELPS, C. J., and STANFORD, UDALL, LA PRADE and WINDES, JJ., concur.