315 P.2d 662

John L. CASEY and Edith Casey, husband and wife, Appellants,

v.

BEAUDRY MOTOR COMPANY, a corporation, Appellee.

No. 6269.

Supreme Court of Arizona.

Sept. 24, 1957.

Robert F. Miller, Tucson, for appellants.

Darnell, Holesapple, McFall & Spaid, Tucson, for appellee.

UDALL, Chief Justice.

The sole question presented by this appeal is whether at the close of all the evidence the trial court erred in taking the case from the jury by instructing a verdict for defendant-appellee, Beaudry Motor Company, a corporation.

This was a tort action initiated by John L. Casey and Edith Casey, his wife, for personal injuries sustained by the wife, growing out of a collision between two motor vehicles. Mrs. Casey was a passenger in a car driven by her husband, which car was owned by the corporate defendant and had been loaned to the plaintiffs for demonstration in contemplation of purchase by them. We shall hereafter refer to the parties either by name or as plaintiffs and defendant.

The principal issue raised at the trial was whether the defendant was negligent in furnishing a defective automobile to the plaintiffs which it knew or should have known was dangerous. Specifically, it is the plaintiffs' contention that the personal injuries suffered by Mrs. Casey (Mr. Casey was not injured) were proximately caused

by the negligence of defendant in knowingly furnishing a car with defective brakes and in not maintaining the standard of care incumbent upon those selling used cars to the public.

Plaintiffs' motion for a new trial was denied and this appeal is from the denial of such motion and from the judgment entered in favor of defendant.

 It is well established in this jurisdiction that in determining the question as to the correctness of a judgment entered on a directed verdict for defendant, conflicting evidence must be viewed in a light most favorable to plaintiff. A motion by defendant for a directed verdict is regarded as admitting the truth of whatever competent evidence the plaintiff has introduced, including the reasonable inferences to be drawn therefrom. Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201; or stated another way:

"Negligence only becomes a question of law for the court's determination when rational minds may not draw different conclusions from the undisputed evidence." Ray v. Tucson Medical Center, 72 Ariz. 22, 230 P.2d 220, 222; and for the latest expression thereon see, Matsumato v. Arizona Sand & Rock Co., 80 Ariz. 232, 295 P.2d 850.

Defendant corporation is engaged, in Tucson, Arizona, in the business of selling new and used automobiles, and in connection therewith operates an authorized service department. Its organization consists of some 50 employees. Defendant knew that plaintiffs were in the market for a used automobile and on March 19, 1954, defendant's salesman invited plaintiffs to try out a 1949 Chrysler which he described as a "nice, clean-looking automobile". Mr. Casey in midafternoon drove it off the lot, with permission of defendant's agent, for the sole purpose of testing the car out for possible purchase. He was accompanied by his wife and daughter. The route taken was out Casa Grande Highway (U.S. 84) for a distance of approximately seven miles, and according to Mr. Casey the brakes functioned properly at the several stops made on the outward journey. Near the point where he turned and started back toward Tucson, in applying the brakes Casey observed the car swerved to the left. On the return trip—which was by way of Prince Road—as the car approached an intersection, he stated, the brakes needed pumping to stop. Approaching the next intersection at Stone Avenue plaintiff saw a car approximately 400 feet in front of him that had stopped for a red light. Recognizing that he must stop, plaintiff testified he took his foot off the accelerator and when within 40 feet of the car ahead, and while moving at a speed of 10 to 15 m.p.h., attempted to stop the Chrysler but found he had no brakes and as a result

the car smashed into the rear of the stopped car. His wife was thrown forward, striking her head against and breaking the windshield. She sustained personal injuries of a serious and permanent nature. No skid marks were laid down by the Casey car prior to impact. The road was dry, level, smooth, paved, free of loose material and the weather was clear. Before the officers arrived the Chrysler car was pushed off the highway, during the process of which, according to Casey, the brakes locked causing skid marks to be laid down. Mr. Casey promptly summoned an ambulance for his wife and advised the corporate-defendant by telephone of the accident and that it had occurred by reason of defective brakes. Mr. Casey had had 25 years experience in driving as a private citizen and as a policeman with various automobiles under various conditions. According to his story he had never previously suffered an accident. Only 20 to 30 minutes elapsed between driving the car off the lot and this accident, and only normal driving was done on the demonstration ride.

In refutation of the charge that the brakes were in a dangerous and defective condition, the defendant introduced evidence which may be thus summarized:

The car in question had been previously sold by defendant as a used car and at this time it was some five years old and had been driven approximately 50,000 miles before its repossession in Farmington, New Mexico. On March 12, 1954, the car was driven from Farmington and delivered to defendant. Immediately thereafter the car was sent to its service department for certain repairs including "adjustment of brakes", preparatory to a resale. Defendant's experienced mechanic, Elmer Rolof, being the person whom the company's written records showed had performed these repairs, testified as to the customary steps taken in adjusting brakes under such a work order. However, the witness had no independent recollection of this particular Chrysler car due to the volume of repair work handled.

One of the sheriff's deputies who investigated the accident and was told by plaintiff that the brakes were defective testified that he then and there gave the Chrysler car a standing brake test—both hard and slow pressure—and found in each instance there was "a three-quarter pedal" which he stated is an extremely good brake.

At the outset it is well to determine the status and relationship of the parties. We hold that the particular factual situation here presented relative to the use of the car establishes a gratuitous bailment wherein the bailor and bailee are mutually benefitted. There is no element of agency involved. The defendant (bailor) is not an insurer against the defective condition of the car placed in plaintiffs' (bailees') hands, but he must use ordinary care to see that it is in a reasonably safe condition to use on the public highways. Bogart v.

10

Cohen-Anderson Motor Co., 164 Or. 233, 98 P.2d 720. In order to establish a prima facie case, i.e., one sufficient to go to the jury, it was incumbent upon plaintiffs to establish by some competent evidence facts tending to show each of the following elements, viz.:

(1) that the brakes were defective;

(2) that such defective condition of the brakes was the proximate cause of the injury; and

(3) that the defendant knew or by the exercise of reasonable care ought to have known the brakes were defective at the time the automobile was delivered to plaintiff. If there was no competent evidence tending to establish any one of the above essential elements, the cause was not entitled to be submitted to the jury.

It is obvious from the foregoing recitation of facts that the evidence or inference properly deducible therefrom was sufficient—even though there was a sharp conflict as to whether the brakes were in fact defective—to have required the submission of issues (1) and (2), supra. This much is conceded in defendant's answering brief. The issue has been narrowed, therefore, to the element of knowledge of defendant, either actual or implied, of the defective brake condition, and whether the proof as to this element was legally sufficient for a jury determination.

Plaintiffs alleged "that if defendant had inspected the brakes of said automobile, it would have known the brakes were defective * * *, but said defendant negligently failed and neglected to inspect the same" and that, as a direct and proximate result of this negligence, the injuries complained of occurred. The burden of course was upon plaintiffs to establish these allegations.

Plaintiffs' theory seems to be that an accident occurred and, therefore, defendant must have been negligent in not inspecting the brakes before placing the car in their hands as otherwise the accident would not have happened. Mr. Casey was asked the following question—on cross-examination —and gave the answer which follows:

"Q. Do you have any information which would tend to establish your allegation that Beaudry Motor Company did not inspect the brakes on this car? A. Merely my deduction, that is all."

We have carefully read the transcript and are unable to find any evidence from which it could properly be inferred defendant knew, or should have known, the brakes were defective at the time the automobile was delivered to plaintiffs. In fact the evidence is all to the contrary and it establishes without contradiction the fact that brakes on the car were adjusted and other repairs made on March 15th or 16th, 1954, which was very shortly before plaintiff Casey drove it out of their used car lot. The evidence also shows, without dispute, that the

man who drove the car from Farmington to Tucson "made no complaint of its operation" and furthermore that after the collision, in making the needed extensive repairs (at a cost of $251) preparatory to a resale of the car in question, no work was done on the brakes. The car was resold on April 5, 1954.

The rule in this jurisdiction as to inferences which may be drawn from the evidence was well stated by Justice Lockwood in the leading case of New York Life Ins. Co. v. McNeeley, 52 Ariz. 181, 79 P.2d 948, and we have followed this rule in determining the problems related thereto in the instant appeal.

Plaintiffs unjustifiably place great reliance upon our decision in the Matsumato case, supra, and claim it is controlling here. They maintain we therein adopted the "scintilla rule" rather than the "substantial evidence rule" which is followed in the Bogart case, supra. The latter decision was cited by defendant and chiefly relied upon by the trial court in making its decision. A careful reading of our decision in Matsumato will disclose that we were of the opinion there was *"competent"* evidence from which two or more reasonable inferences might be drawn, hence the reversal with direction to grant a trial on the merits. Admittedly that case presented a close and difficult question, but we certainly did not therein adopt or even discuss the so-called "scintilla of evidence rule".

While the terminology used in our reported decisions on this point may have varied, the yardstick has consistently remained the same, i.e.:

"The court is justified in directing verdict only where evidence is insufficient to support contrary verdict or so weak that court would feel constrained to set aside such a verdict on motion for new trial." Quoted from the syllabus in Nichols v. City of Phoenix, 68 Ariz. 124, 202 P.2d 201. See, also, Barker v. General Petroleum Corp., 72 Ariz. 187, 232 P.2d 390, on rehearing 72 Ariz. 238, 233 P.2d 449; Bassett v. Ryan, 72 Ariz. 383, 236 P.2d 458; Picow v. Baldwin, 77 Ariz. 395, 272 P.2d 613.

The late Justice LaPrade in the case of Cope v. Southern Pacific Co., 66 Ariz. 197, 185 P.2d 772, speaking for a unanimous court, expressed the same thought:

"A verdict will not be directed where the evidence is conflicting, or where, on all the facts and circumstances proven, there is room for fair and sensible men to differ in their conclusions." (Quoted from syllabus.)

In Tremaine Alfalfa R. & M. Co. v. Carmichael, 32 Ariz. 457, 259 P. 884, the term "substantial evidence" was used. More frequently perhaps in our decisions the expression "competent evidence" ap-

pears. Ettlinger v. Collins, 25 Ariz. 115, 213 P. 1002; Jeune v. Del E. Webb Const. Co., 76 Ariz. 418, 265 P.2d 1076.

An examination of the reported cases listed in Vol. 38 Words and Phrases, Scintilla of Evidence, page 334 et seq., would indicate that the term "scintilla of evidence" has various shades of meaning. It appears to us that plaintiffs are contending the phrase means "a suspicion of the existence of a fact to be established", or "the least particle of evidence; evidence which, without other evidence, is a mere trifle", or, as the dictionary defines it, "the slightest particle or trace". Webster's New Int. Dict., 2d Ed. If such be their contention, we reject it. The Federal courts, in two cases arising in this jurisdiction, rejected the scintilla rule. See Collins v. Streitz, 9 Cir., 95 F.2d 430, certiorari denied 305 U.S. 608, 59 S.Ct. 67, 83 L.Ed. 387, and Quebedeaux v. Hammons, 9 Cir., 22 F.2d 530.

On this record we hold the trial court did not err in instructing a verdict for defendant; to have ruled otherwise would have permitted the jury to draw speculative inferences not based on probative facts.

The other assignment of error claiming negligence per se due to a claimed violation of A.R.S. § 28–952, which requires adequate brakes on a motor vehicle before placing it upon the public highway, need not be considered. As heretofore pointed out there is no competent evidence from which an inference could have been drawn that the defendant knew or should have known the brakes were defective at the time the car was delivered to plaintiffs; hence the statute has no application to the instant problem.

Judgment affirmed.

WINDES, PHELPS and STRUCKMEYER, JJ., concurring.

NOTE: JOHNSON, J., having been the trial judge, took no part in the determination of this appeal.